JOSEPH BISI v. AMERICAN AUTOMOBILE INSURANCE COMPANY ET AL.

BROWN, C. J., JENNINGS, BALDWIN, INGLIS and O'SULLIVAN, JS.

Argued November 10, 1950—decided January 16, 1951

*Edward Seltzer,* for the appellants (defendants).

*William M. Pomerantz,* for the appellee (plaintiff).

INGLIS, J.   This action is to recover upon an automobile collision insurance policy.   The principal question is whether the trial court erred in concluding that the policy covered the automobile which was damaged.

The plaintiff was a dealer in used cars.   On October 29, 1948, the defendants issued to him an automobile dealers' policy, insuring him for one year against loss by reason of "collision or upset," in which the coverage clause, in so far as it is relevant to the case, read as follows: "1. Coverage.   The policy designated above covers automobiles owned by the insured and held for sale or used in repair service, or as demonstrators, but excludes automobiles sold under a conditional sale, mortgage, lease or similar agreement."

On Saturday morning, August 27, 1949, the plaintiff agreed to sell and Joseph Finch agreed to buy on con-

ditional sale a Plymouth sedan which was then owned and held for sale by the plaintiff. The purchase price agreed upon was $1275, to be paid by $400 in cash, an allowance of $75 on a Ford which Finch was to transfer to the plaintiff, and the financing of the balance of $800 through the assignment of the conditional sale contract to a finance company. It was agreed that the sale would be consummated provided the plaintiff could succeed in negotiating the conditional sale contract and note to an automobile finance company and thereby obtain the balance of the purchase price. The plaintiff explained to Finch that it would be necessary for him to procure a guarantor to sign the note with him and that the finance company would require time in which to investigate the financial responsibility of Finch and his comaker. Finch produced William Gallagher, who was willing to sign the note. The plaintiff then telephoned the Associates Discount Corporation and gave that company the details of the proposed transaction. He was told that the transaction could not be completed that day because sources of information as to credit risks were closed on Saturday. That information was communicated to Finch. Thereupon Finch executed an instrument transferring title of his Ford to the plaintiff and paid him $350 in cash. He and Gallagher signed a note and, in duplicate, a conditional sale contract which stated that the price of the Plymouth was $1275, to which were to be added finance charges of $354.40, that $475 had been paid by cash and the trade-in value of the Ford and that the balance of $1154.40 was to paid in twenty-four monthly instalments. Finch also signed an application for the motor vehicle registration of the Plymouth in his name. All of these documents were delivered to the plaintiff. It was agreed that Finch would pay the $50 balance of the down payment on the following Monday when and

if the Associates Discount Corporation approved the terms of the sale and if it agreed to accept the negotiation of the note and conditional sale contract.

After the various papers had been signed, Finch stated that he had to have the use of a car over the weekend to drive to his family's home in the village of Maine, New York, and that his Ford was not in proper mechanical condition to make the trip. Thereupon, the plaintiff allowed Finch to use the Plymouth to make the trip. He attached his used-car dealer's registration plates to the Plymouth and Finch drove it off.

On Sunday, August 28, while Finch was making the trip, he was in a collision with another car near Endicott, New York. The Plymouth was damaged and it cost $529.35 to repair it. The bill for repairs was later paid by the plaintiff and the car was returned to him. On Monday, before he received the news of the collision, he had been advised that the Associates Discount Corporation would finance the conditional sale contract and had been paid the $800 on account thereof. When, later in the same day, the accident was reported to him, he returned the $800 to the finance company.

The manifest meaning of the policy of insurance is that it will cover any automobile owned by the plaintiff as a dealer until it is sold by him, if he disposes of it by absolute sale, or, if he disposes of it by conditional sale, until he delivers possession of it to the vendee pursuant to the conditional sale contract. Any car which he owns is still "held for sale" under the terms of the policy after he has agreed to sell it, if his agreement to sell is nothing more than an executory contract. It continues to be held for sale until he has completed a sale. In the case of an executory agreement to sell by absolute sale, the car continues to be held for sale until title to the car passes. In the case of a conditional sale, title does not pass upon delivery

to the vendee. All that then passes is the right to possession. *Baker* v. *Brown & Thomas Auto Co.*, 101 Conn. 575, 577, 126 A. 703. Accordingly, an executory agreement to make a conditional sale becomes executed so that the vendor no longer holds the car for sale only when possession is delivered pursuant to the conditional sale. Delivery for any purpose other than to complete the executory agreement does not execute that agreement. See *Lockwood* v. *Helfant*, 126 Conn. 584, 586, 13 A. 2d 136; *Vanderbeek* v. *Francis*, 75 Conn. 467, 469, 53 A. 1015.

In the present case, the agreement between the plaintiff and Finch was an executory one. Each of the parties had an unfulfilled promise to perform, and both promises were subject to the condition that the finance company would accept an assignment of the conditional sale contract. Their agreement would become executed only when the plaintiff delivered possession of the car to Finch pursuant to the conditional sale agreement. Until that time the plaintiff held the car for sale as specified in the policy. Until that time, also, the car was not an automobile which had been sold under a conditional bill of sale so as to bring it within the exclusionary clause of the policy.

The real question in the case, therefore, is whether the delivery of possession of the car by the plaintiff to Finch was a delivery in pursuance of the executory agreement for a conditional sale. That is a question of intent. All the attendant circumstances having been found as matters of fact, the intent of the parties is to be determined from those circumstances. *Preston* v. *Verplex Co.*, 135 Conn. 187, 190, 62 A. 2d 860; *Ives* v. *Willimantic*, 121 Conn. 408, 411, 185 A. 427; *Peterson* v. *Universal Automobile Ins. Co.*, 53 Idaho 11, 20, 20 P. 2d 1016. Aside from the finding by the trial court that the conditional sale would be consummated

only in the event that a finance company would finance the transaction, there are two very significant facts bearing on the question. One is that no copy of the conditional sale contract was delivered to Finch. If the parties understood that the delivery of possession of the car was the performance of the agreement to sell, the natural thing for the plaintiff to do would be to hand Finch one copy of the contract. In the second place, it was not under a claim of right that Finch took the automobile for his trip to New York state. The finding is that he did not demand delivery of the car but rather merely told the plaintiff that he needed a car for use over the weekend and that then the plaintiff "allowed" him to use the car in question. If the intent of the parties had been that the executory agreement was to be performed by the delivery of the car—if, in other words, the delivery of possession had been deemed by them to be a delivery under the conditional sale agreement — then Finch would naturally have insisted that he had the right to take the car. From these facts it is clear that the intent of the parties was not to deliver the Plymouth to Finch pursuant to the conditional sale contract at that time. The plaintiff had in his possession ample security to guarantee the return of the car by Finch if the conditional sale agreement was not consummated. It is clear that Finch was expected to return the car at the termination of the weekend, and if he had not been involved in the collision and had failed to return the automobile the plaintiff was in a position to replevy it. He would not have had to wait for any default in the conditional sale contract or even for an answer from the finance company refusing to accept the paper. Under all the circumstances, therefore, it appears that the intent of the parties was that the car was merely being loaned to Finch for use over the weekend. The trans-

action was one of bailment. It follows that even after the loan of the car was made it was still held by the plaintiff for sale and did not come within the exclusionary clause of the policy relating to automobiles sold on conditional sale. See *Allen* v. *Berkshire Mutual Fire Ins. Co.*, 105 Vt. 471, 476, 168 A. 698; *Williams* v. *General Motors Acceptance Corporation*, 61 Ga. App. 750, 7 S. E. 2d 402; 45 C. J. S. 831.

The defendants further claim, although they did not raise the point on the trial, that a new trial should be granted for failure of the court to have a stenographer in attendance as required by the provisions of General Statutes, § 7591.[1] Upon a cursory reading, this section might appear to be in conflict with General Statutes, § 7731.[2] Section 7731 in somewhat different form was first adopted in 1887. Public Acts, 1887, c. 19. It originally applied to courts of common pleas, and later to the District Court of Waterbury and the town, city

---

[1] "Sec. 7591. STENOGRAPHERS IN MUNICIPAL COURTS. The judge of each municipal court having civil jurisdiction shall call in a competent stenographer, who shall be sworn to the faithful performance of his duties, to take the evidence in every civil action in which the right of appeal lies directly to the supreme court of errors unless all the parties in any case or matter pending therein shall agree in writing that no stenographic record of the proceedings shall be made. Should necessity require, any stenographer called in under the provisions of this section shall employ competent assistants to act for him in such court, who shall also be sworn and be subject to the same rules and duties as such stenographer. The provisions of sections 7732 and 7734 shall apply to any stenographer appointed under the provisions of this section."

[2] "Sec. 7731. JUDGE OF MUNICIPAL COURT MAY CALL IN STENOGRAPHER. Whenever the judge of any municipal court shall deem it necessary, he may call in a competent stenographer to take the evidence in any civil action or criminal prosecution pending in the court over which he presides. Should necessity require, any stenographer called in under the provisions of this section shall employ competent assistants to act for him in such court, who shall also be sworn and be subject to the same rules and duties as such stenographer."

and police courts as well. General Statutes, Rev. 1888, § 737; Rev. 1902, § 527. Section 7591 was enacted in 1941. Sup. 1941, § 747f. This section applies to municipal courts having civil jurisdiction from which an appeal lies directly to the Supreme Court of Errors. The two statutes are not in conflict. The later statute supplements the earlier by making specific provisions to cover a particular situation. It is controlling as the latest expression of the legislative will upon the subject. *Tuohey* v. *Martinjak,* 119 Conn. 500, 507, 177 A. 721. Section 7731 permits the calling in of a stenographer in any municipal court at the discretion of the judge of that court. *Reader* v. *Grossman,* 98 Conn. 283, 119 A. 52. Section 7591 makes it mandatory upon the judge of any municipal court having civil jurisdiction to call a stenographer to act in every civil action in which an appeal lies directly to the Supreme Court of Errors unless all of the parties stipulate to the contrary. Failure to comply with § 7591 is reversible error. To take advantage of the error, however, an appellant must have made at the trial an objection to proceeding without a stenographer and obtained a ruling upon the objection. In the absence of such an objection and ruling, this court will not reverse the judgment on the ground that the statute has not been complied with. Practice Book § 157. The defendants did not press their assignment of error directed at the conclusion of the trial court that they had waived proof of loss.

There is no error.

In this opinion BROWN, C. J., JENNINGS and O'SULLIVAN, Js., concurred.

BALDWIN, J. (dissenting). I do not agree with the result reached in the majority opinion. The decision of the case turns upon the interpretation of the insur-

ance policy in the light of the conduct of the parties themselves. The policy covered only automobiles owned by the plaintiff and held for sale by him. While the detail of the financing may not have been completed, the car could no longer be considered as held for sale. Finch had decided to buy and the plaintiff to sell. The plaintiff could not have sold it to another without violating his agreement with Finch, while he could have sold the car which Finch turned in in trade. He had Finch's money and his note with the power to transfer it to the finance company, which he subsequently did. After the car was damaged he still retained the cash which Finch had paid him, together with the automobile which Finch turned in in trade.

The majority opinion points to two very significant facts bearing upon the question of the consummation of the transaction. One is that no copy of the conditional sale contract was delivered to Finch. There is no finding on that point. If the approval of the finance company was required, it is fair to assume that the plaintiff would have kept all of the copies while awaiting receipt of that approval. It is also stated that it was not under a claim of right that Finch took the automobile. Whether he claimed right to possession or not, the plaintiff gave him possession of the car. In every contract of sale, delivery of possession of the article sold is of paramount significance. Delivery manifests the intention of the parties better than their words. The fact that the plaintiff attached his dealer's registration plates to the Plymouth rather than those belonging to Finch is of no significance. General Statutes, § 2400, permits a dealer to loan his registration plates when a "person shall have purchased a motor vehicle, the registration of which by him is pending." This was apparently the situation, for Finch had left an

application for transfer with the plaintiff. The parties had done everything they could to make the transaction complete. The required approval of the finance company was a condition over the performance of which neither party had any control whatsoever. If the finance company approved, Finch would not have to return the car. If it did not, the plaintiff would have, under the agreement, a right to retake the car which was no different from nor greater than the right he had if Finch failed to pay the balance of the purchase price.

The car was no longer owned by the plaintiff and held for sale by him within the intent of the policy. *Peterson* v. *Universal Automobile Ins. Co.,* 53 Idaho 11, 21, 20 P. 2d 1016, note, 133 A. L. R. 787; *Garuba* v. *Yorkshire Ins. Co.,* 233 Iowa 579, 581, 9 N. W. 2d 817; *Continental Ins. Co.* v. *Michaels,* (Tex. Civ. App.) 13 S. W. 2d 465; see *Concordia Fire Ins. Co.* v. *McCarty Motor Co.,* (Tex. Civ. App.) 45 S. W. 2d 446. *Lockwood* v. *Helfant,* 126 Conn. 584, 13 A. 2d 136, on which the plaintiff particularly relied, was a jury case decided on disputed facts. The case at bar rests upon facts found.

Where there is a conditional sale, with delivery to the buyer, title remaining in the seller until the performance of certain conditions, the seller holds the title as security for the purchase price; but the buyer, because he has the use and dominion of the automobile, bears the risk of loss. *Baker* v. *Brown & Thomas Auto Co.,* 101 Conn. 575, 577, 126 A. 703; *O'Neill-Adams Co.* v. *Eklund,* 89 Conn. 232, 235, 93 A. 524.

I concur in that part of the majority opinion which disposes of the defendants' claim of error predicated upon the failure of the court to call in a stenographer as required by General Statutes, § 7591.