No. 39,432

W. H. Brown and Roberta Brown, *Appellants,* v. Tri-State Insurance Company and Securities Acceptance Corporation, a Corporation, *Appellees.*

(274 P. 2d 769)

Opinion filed October 9, 1954.

*George E. McCullough,* of Topeka, argued the cause, and *Robert L. Kimbrough,* of Topeka, was with him on the briefs for the appellants.

*Barton E. Griffith,* of Topeka, argued the cause, and was on the briefs for the appellee Tri-State Insurance Company.

No appearance for the appellee Securities Acceptance Corporation.

The opinion of the court was delivered by

Wertz, J.: This was an action to recover on a contract of insurance covering a 1949 Lincoln automobile which was destroyed by fire and upset. From an order of the trial court sustaining a demurrer to the plaintiffs' evidence, they appeal. The pertinent facts may be stated as follows:

Appellants W. H. and Roberta Brown, hereinafter referred to as plaintiffs, were the owners of a policy of insurance on a 1949 Lincoln two-door sedan, subject to a chattel mortgage held by appellee Securities Acceptance Corporation, hereinafter referred to as the finance company. The insurance policy was issued by the appellee Tri-State Insurance Company, hereinafter referred to as defendant, to cover loss by fire, collision and upset, and covered plaintiffs to

the actual cash value of the automobile. The policy contained exclusion provisions as follows:

"Exclusions. This policy does not apply: (h) under Coverages D, E-1, . . . while the automobile is subject to any . . . conditional sale, . . . not specifically declared and described in this policy. (m) under Coverages D and G to loss due to . . . by any person in lawful possession of the automobile under a . . . conditional sale, . . ."

Plaintiffs were in financial difficulty and were in doubt as to their ability to make the monthly payments of $69 on the chattel mortgage held by the finance company, and offered to return possession of the automobile to it as chattel mortgagee. The finance company advised plaintiffs that if they could find a buyer for the automobile they would save money by selling the car themselves. The latter part of September, 1952, plaintiffs entered into an oral agreement for the sale of the automobile with a party by the name of Bessette. They agreed to sell the automobile to Bessette if the latter would pay them $140 in two installments of $70 each, and a further condition that the finance company agree to accept Bessette as obligor under the chattel mortgage and relieve plaintiffs therefrom. It was agreed between the plaintiffs and Bessette that neither should use the automobile until after Bessette had either been accepted or rejected as obligor under the chattel mortgage held by the finance company. The automobile pursuant to the agreement was placed on the property of Bessette and he was given one set of keys to the car. The other set of keys, the certificate of title and automobile license tags were retained by the plaintiffs. It was further agreed that neither plaintiffs nor Bessette should drive the car, and that the set of keys given Bessette was for the purpose of moving the automobile on and around his premises when it became necessary. The car was placed on Bessette's premises so that plaintiffs could not drive it, and the certificate of title, one set of keys and license tags were retained by plaintiffs so Bessette could not drive or use the car. The agreement further provided that if the finance company would agree to substitute Bessette for plaintiffs as to the balance of the mortgage debt, then plaintiffs were to assign and deliver their certificate of title to the car to Bessette and give him the second set of keys, and if the finance company refused to accept Bessette on the balance of the mortgage debt, then plaintiffs were to return to Bessette the $140 paid, and Bessette was to return to plaintiffs his set of keys, and no sale would be consummated. After the

second payment of $70 was made by Bessette to plaintiffs, the parties agreed that when plaintiff Brown returned to Topeka from construction work at Hiawatha, they would go to the chattel mortgagee, the finance company, to complete the details as to whether Bessette would be acceptable to them. The amount of $69 of the second $70 payment was turned over by plaintiff to the chattel mortgagee as a payment then due on the outstanding mortgage. Plaintiff Brown testified there was a definite understanding that neither plaintiffs nor Bessette were to drive the car. To make sure that the agreement was fulfilled, plaintiffs were to keep the car tags, title and keys. He testified as follows:

"Q. As a matter of fact, Mr. Brown, wasn't your arrangement with Bessette that you sold the car to him on condition that he would take over the balance of the mortgage debt on the Lincoln sedan?

"A. Yes, sir; if his credit would prove satisfactory and the Securities Acceptance would accept him as to take over my note.

"Q. But you did sell it to him and take his money on certain conditions?

"A. On certain conditions he would be accepted at the Securities Acceptance Company.

"Q. In other words, he was to buy the car for the balance of the mortgage indebtedness against it?

"A. Yes, sir."

On October 9, which was the day plaintiffs and Bessette were to go to the office of the finance company, Bessette in violation of the agreement drove the automobile upon the highway where he became involved in an accident in which the car was destroyed by fire. The defendant insurance company denied liability under its policy on the ground that the automobile at the time of the fire was subject to a conditional sale, and that there was no liability upon it under the exclusion provisions of the policy hereinbefore referred to. The court below sustained the demurrer to the plaintiffs' evidence and found that the agreement constituted a conditional sale and entered judgment for the defendant, from which plaintiffs appeal.

The question of the finance company's rights as against the defendant insurance company not having been raised in this appeal, will not be discussed. The sole question for this court's determination is whether the agreement as disclosed by plaintiffs' evidence constituted a conditional sale as a matter of law, so as to preclude the plaintiffs from recovery under the insurance policy.

A conditional sale has been broadly defined as one in which the vesting of the title in the purchaser is subject to a condition prece-

dent, or in which its revesting in the seller is subject to a failure of the buyer to comply with a condition subsequent; a purchase for a price paid or to be paid, to become absolute on the occurrence of a particular event. (78 C. J. S. 254, § 553.)

In Tiedeman on Sales 300, § 201, it is stated:

"No particular words or forms of expression are really necessary for the creation of a conditional sale. Any words, which indicate an intention to annex a condition to the sale, will be sufficient. Such phrases, however, as 'on condition,' 'provided,' 'if it shall so happen,' etc., are found in constant use, in the making of conditional sales, and, if employed, will usually remove any doubt as to the sale or transfer being conditional. But whether these expressions are used or not, if the intention of the parties, to make the sale dependent upon the happening of some event or the performance of some collateral obligation, can be ascertained from the expressions of the parties, it will be a conditional sale, it matters not what may be the language used."

A conditional sale contract may impose conditions other than payment of the purchase price provided such conditions are not inconsistent with a retention of title and are not contrary to statute or public policy. [78 C. J. S. 258, § 554(c).] A conditional sale contract may provide the title is to vest in the vendee upon the performance of any condition or the happening of any contingency. (47 Am. Jur. 50, § 860.)

In a conditional sale, the conditions upon which the passing of title may be made to hinge are infinite in variety and depend solely upon the will of the parties. (Jones on Chattel Mortgages and Conditional Sales, Vol. 3, p. 14, § 912.)

It appears to be the general rule that whether a contract is one of conditional sale or a contract of a different character is a question of the intent of the parties as shown by the terms of the agreement. In arriving at the final conclusion, the whole of the contract is to be considered, and no detached term or condition is to be given prominence or effect over another. The question of intent is one of fact to be determined from the circumstances surrounding the transaction, the situation of the parties, their purpose, the thing they sought to accomplish and the method they employed. (78 C. J. S. 259, § 555.)

It is apparent from the foregoing that while the monetary value is the most common consideration for a conditional sale, it is not always controlling. Consideration may be either a benefit or a detriment, and the assumption of the debt of the vendor to a third person is not so unusual as to preclude a conditional sale.

The undisputed evidence disclosed that the plaintiffs, with the consent of the finance company, were attempting to realize some consideration for their equity in the automobile. It was their intention to sell their interest to Bessette, and it was Bessette's intention to buy the automobile upon the payment of the consideration of $140, conditioned upon the finance company's acceptance of Bessette on the outstanding chattel mortgage. The plaintiffs and Bessette had done everything they could to make the transaction complete. The automobile was delivered to Bessette. He had paid plaintiffs the $140 for their equity in the car. He was given possession of the automobile and one set of keys, and plaintiffs removed their license tags therefrom. The required approval of the finance company was a matter over which neither party had any control. Plaintiffs could not have sold the automobile to some third person, nor could they have gone onto Bessette's premises and taken possession of the automobile until the finance company had refused to accept Bessette on the outstanding chattel mortgage, without violating their conditional sale agreement. It is true the parties agreed that neither would use the automobile until the finance company had determined whether Bessette would be acceptable on the mortgage. However, we cannot say this fact will prevent what is otherwise a conditional sale from being a conditional sale. The parties were free to contract as they desired. It may be true that neither party had the right to use the automobile. However, Bessette with possession of the car had the power to use it. In view of what has been said, we are unable to say that the court erred in holding that the agreement of the parties constituted a conditional sale of the automobile, and inasmuch as the automobile was subject to a conditional sale, the plaintiffs were barred from recovery under the policy.

The judgment is affirmed.

WERTZ, J. (dissenting): I cannot agree with the majority opinion which fell to my lot to write, nor can I bring myself to the conclusion that the agreement entered into by the parties in the instant case constituted a conditional sale as that term is used in the commercial field, or as contemplated by the exclusionary provision of the insurance policy. A conditional sale in the commercial field of law has a definite meaning as hereinafter related.

Provisions frequently appear in theft, fire and collision policies

upon automobiles making the policy void if any change other than by death of the insured takes place in the interest, possession or title of an automobile unless otherwise provided by agreement endorsed thereon, and such provisions are ordinarily valid and enforceable. A breach thereof by the insured voids the policy. (*Koenke v. Iowa Home Mutual Cas. Co.*, 175 Kan. 473, 264 P. 2d 472.) However, in order for such a clause to become operative, there must be a change in the property interest of the insured in the automobile, and not merely some contractual arrangement respecting the car which, whatever personal obligations it creates between the parties, does not work any change as to ownership, and where an insured enters into a contract contemplating transfer of the automobile insured, but no further steps are taken and no formal transfer by insured is ever executed, it cannot be said as a matter of law that there has been any transfer of title within the meaning of the policy so as to result in the forfeiture thereof. (6 Blashfield, Cyclopedia of Automobile Law and Practice, 218, § 3598.)

It is stated in 47 Am. Jur., Sales, 72, § 871:

"The transfer by the vendor to the vendee of the *possession and right of use* of the goods sold is one of the *distinctive* elements of a contract of conditional sale. The vendee acquires the right of possession and use of the property sold, as long as he is not in default, and the right to become the absolute owner upon complying with the terms of the contract, without further assent on the part of the vendor. These are the vendee's legal rights, of which no act of the vendor can divest him." (Italics supplied.)

In a conditional sale, the title in the seller is for security only to assure the payment of the purchase price. It carries with it none of the ordinary incidents of ownership. The buyer has the possession and use of the property to the complete exclusion of the seller, subject only to the seller's remedies in case of default. (*Luke v. Mercantile Acceptance Corp.*, 111 C. A. 2d 431, 244 P. 2d 764; *Bowden v. Bank of America*, 36 Cal. 2d 406, 413-414, 224 P. 2d 713; 78 C. J. S. 254, § 553; Vold on Sales, 267, § 95.)

In 2 Williston on Sales, Revised Edition, 285, § 330, it is stated:

"In fact the buyer acquires not simply a contract right but a property right. This is due to the fact that the seller does not simply contract that the buyer shall have possession but actually delivers possession, and this possession is delivered not to hold the goods for the seller, but to use as the buyer's own. Moreover, the buyer, so long as he is not in default, may maintain his possession and use of the property against the world."

The interests held by a purchaser under a conditional sale are

twofold; first, his right to the possession and use of the chattels; secondly, his right to acquire the absolute title and complete ownership upon payment of the purchase price. While the rights of the conditional purchaser in the chattels are not limited to mere possessory interest, possession in him is, nevertheless a component part of his equitable ownership. The right of possession is exclusive in him as long as he is not in default in the performance of his contract. A conditional sale constitutes somewhat of a dual ownership in which both the seller and the buyer own the property, a divided ownership in which one of the prime essentials of complete ownership—the title—is in the seller, and the other essential—possession and privilege of use—is in the buyer, together with the added privilege of acquiring the title upon payment of the full purchase price. (3 Jones on Chattel Mortgages and Conditional Sales, 336, 339, §§ 1263, 1264.)

This brings me to the question whether the evidence as a matter of law meets all of the elements of a conditional sale. I think it is clear from the facts, and what the parties did in the present case, that a conditional sale was not intended. The agreement between the parties was executory in its nature. Each of the parties had an unfulfilled promise to perform, and both promises were subject to the condition that the finance company would accept Bessette as obligor on the outstanding mortgage. Their agreement would become executed only after the acceptance by the finance company of Bessette on the mortgage, and when the plaintiff delivered the certificate of title, the extra set of keys and the unlimited possession pursuant to the agreement, and until such time the car was not one which had been sold under a conditional sale, so as to bring it within the exclusionary clause of the insurance policy.

Defendant contends that possession of the automobile was given to Bessette. Even if it were conceded a limited possession was given, such possession was not such as is contemplated by a conditional sale. Bessette had no right to use the automobile nor could he treat it as his own, as is contemplated under a conditional sale contract. The car was left on his premises only as security for the down payment which he had parted with, and the fact that neither could use the automobile was evidence that the entire contract was in abeyance until the finance company had accepted Bessette as obligor under the outstanding chattel mortgage. If Bessette was accepted as obligor, then plaintiffs would deliver the

title, possession and the other set of keys. If Bessette was not accepted by the finance company as obligor on the outstanding chattel mortgage, then plaintiff would return the $140 to Bessette, pick up his automobile, and place the parties in *status quo*. The arrangement was somewhat analogous to an escrow agreement pending completion of a sale. In *Pomeroy v. Insurance Co.*, 86 Kan. 214, 120 Pac. 344, it is stated:

"While a deed is in escrow, awaiting the performance of conditions precedent to the delivery thereof by the vendor to the vendee, there is no change in the title or right of possession to the property although the purchaser occupies it with the consent of the vendor in anticipation of completing the contract of sale and purchase.

"Where, in such case, the vendor has a fire insurance policy on a house situated on the premises, and the house is destroyed by fire while so occupied and before the conditions of the escrow are performed, the hazard from fire not being increased, the right to recover on the contract of insurance is not forfeited." (Syl. ¶ ¶ 1 and 2.)

In the case of *Bisi v. American Automobile Ins. Co.*, 137 Conn. 424, 78 A. 2d 533, a somewhat similar situation to the instant case arose. The facts were that the parties entered into an agreement for the sale and purchase of an automobile. There was an insurance policy involved covering the automobile with exclusion provisions identical to the one in our present case. The buyer made a down payment in cash and executed an instrument transferring title of the automobile he was trading for a new automobile. The completion of the sale was held in abeyance from Saturday until the following Monday, because it was impossible to acquire the finance company's consent to an assignment of the conditional sale contract until that time. The buyer was allowed to take the car over the week end because he desired to make a trip. A collision occurred and the car was damaged. In an action to recover on the automobile collision policy, the court held that an executory agreement to make a conditional sale becomes executed so that the vendor no longer holds the goods for sale only when possession is delivered pursuant to the conditional sale. Delivery for any purpose other than to complete the executory agreement does not execute that agreement, and further held that the agreement between the parties did not come within the exclusionary clause of the policy relating to automobiles sold on conditional sale.

In view of what has been said, I am of the opinion that the contract entered into between the parties was merely executory in

nature and did not amount to a conditional sale as to fall within the exclusionary clause of the insurance policy, and that the judgment of the trial court should be reversed and a new trial ordered on all issues.

HARVEY, C. J., and SMITH, J., join in the foregoing dissent.