No. 44,762

MARYLAND CASUALTY COMPANY, a Corporation, *Appellee* and *Cross Appellant,* v. AMERICAN FAMILY INSURANCE GROUP OF MADISON, WISCONSIN, a Corporation, *Appellant* and *Cross Appellee.*

(429 P. 2d 931)

Opinion filed July 12, 1967.

*Charles L. Davis, Jr.,* of Topeka, argued the cause, and *Byron M. Gray* and *Robert D. Hecht,* of Topeka, were with him on the brief for the appellant and cross appellee.

*James C. Wright,* of Topeka, argued the cause, and *Warren Shaw, William Hergenreter* and *Carl W. Quarnstrom,* of Topeka, were with him on the brief for the appellee and cross appellant.

The opinion of the court was delivered by

O'CONNOR, J.: This action involves a dispute between the plaintiff, Maryland Casualty Company, and the defendant, American Family Insurance Group, and presents for determination the question of coverage, if any, under the defendant's policy on a 1953 Plymouth automobile.

The facts giving rise to this dispute have been stipulated. On May 9, 1963, the defendant's insured, LaMotte Shaw, owner of the Plymouth, and plaintiff's insured, Tom Willis, whose mother owned a 1948 Volkswagen, agreed to trade automobiles. As additional consideration Willis gave Shaw a promissory note for $100 due May 15, 1963. It was agreed that the certificate of title to the Plymouth was to be retained by Shaw to insure payment of the note, and upon satisfaction thereof the certificate of title was to be properly endorsed and delivered to Willis. Shaw turned the Plymouth and

the keys thereto over to Willis, and Willis placed his license plate from the Volkswagen onto the Plymouth. About three hours after the trade was accomplished, Willis, while driving the Plymouth, collided with another automobile being driven by one Joanne Benson. Shortly after the collision, Willis, a minor, repudiated his deal with Shaw. The $100 was never paid, nor was the certificate of title to the Plymouth ever endorsed and delivered to Willis.

Thereafter, suit was brought in Shawnee county district court by Joanne Benson against both Shaw and Willis. Plaintiff and defendant undertook defense of their respective insureds, and eventually plaintiff negotiated a settlement with Joanne Benson for personal injuries and damages sustained by her in the collision. The settlement for $5,150 was within the applicable policy limits of the plaintiff's policy as well as the defendant's policy. Plaintiff's attorney orally made demand on defendant's counsel to pay the settlement, but the demand was refused.

Plaintiff paid the settlement and then brought the present action against the defendant to recover the amount of the settlement, costs and attorneys' fees. The case was submitted to the district court on stipulated facts, and the court entered judgment in favor of plaintiff for the amount of the settlement, and costs, from which judgment the defendant appeals. The court denied plaintiff's request for allowance of attorneys' fees, and this forms the basis of a cross appeal by the plaintiff.

In a lengthy memorandum opinion the district court found: (1) The purported sale without assignment of the certificate of title was void under K. S. A. 8-135 (c) (6); (2) Shaw remained the owner and was covered under defendant's policy; (3) Willis was using the automobile with Shaw's permission, and therefore came within the omnibus clause of defendant's policy; and (4) defendant's policy afforded primary coverage.

Defendant raises numerous points of error, and they will be considered in due course.

We must first determine whether or not Shaw, the seller, was the owner of the Plymouth automobile at the time of the collision within the meaning of the "owned automobile" coverage afforded by defendant's policy, and if so, whether under the omnibus clause Willis was using such automobile with Shaw's permission. If as a result of the transaction Shaw was no longer the owner, defendant's

policy would offer no coverage, for Shaw would not be in a position either to give or withhold his permission or consent to the use of the automobile by Willis, the new owner.

Portions of defendant's policy pertinent to this point are as follows:

"Liability Coverage

"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage arising out of the ownership, maintenance or use of an *owned* automobile or the use of a non-owned automobile, . . .

"Persons Insured

"1. The following are insureds under the Liability Coverage:

"a. With respect to an *owned* automobile,

"(1) the named insured,

"(2) any other person using such automobile with the permission of the named insured, provided his operation or, if not operating, his other actual use thereof is within the scope of such permission, . . .

"Definitions . . .

" '*owned* automobile' means

"a. the automobile described in the declarations; . . ." (Emphasis added.)

Plaintiff seeks to sustain the decision of the lower court by relying on K. S. A. 8-135 (*c*) (6):

"It shall be unlawful for any person to buy or sell in this state any vehicle required to be registered hereunder, unless, at the time of delivery thereof there shall pass between the parties such certificate of title with an assignment thereof, as herein provided, and the sale of any vehicle registered under the laws of this state, without the assignment of such certificate of title, shall be fraudulent and void."

and contends that since the certificate of title was not assigned by Shaw to Willis at the time of the transfer of the possession of the automobile, the sale was fraudulent and void, and thus, Shaw remained the owner under defendant's policy. Defendant, on the other hand, urges that the transaction was a conditional sale, that Shaw, having only a security interest, was no longer the owner, and that the mentioned statute is inapplicable.

In support of its position, defendant directs our attention to *Weaver v. Hartford Fire Ins. Co.*, 168 Kan. 80, 211 P. 2d 113, and *Brown v. Tri-State Ins. Co.*, 177 Kan. 7, 274 P. 2d 769. A detailed analysis of these cases is justified. In *Weaver*, plaintiff was the owner of a 1939 Ford truck insured by the defendant. Defendant's policy contained an automatic insurance clause that provided cov-

erage on a replacement vehicle, and an exclusionary clause if plaintiff had other valid and collectible insurance to cover losses to the vehicle. Plaintiff traded the Ford truck for a new White truck. The balance of the purchase price for the new truck was financed, and plaintiff executed a conditional sales contract. After taking possession of the White truck, plaintiff obtained a new policy of insurance on the truck from another company. Before the bill of sale for the new truck was delivered, the truck was damaged in an explosion. Defendant was duly notified of the loss, and also of the purchase of the replacement vehicle. This court held that for the purposes of the new insurance taken out on the White truck by the plaintiff, he, as a purchaser, had an insurable interest therein, notwithstanding he had not yet received a bill of sale and certificate of title. In the opinion it was stated:

". . . A person may actually own an automobile and thus have an insurable interest in it and yet not have legal evidence of title. . . ." (p. 84.)

The court concluded, however, that although the White truck came within the automatic insurance clause of defendant's policy, the policy did not afford coverage, because plaintiff had "other valid and collectible insurance" by virtue of the new policy taken out with the other company. It is apparent the case turned on the question of whether plaintiff, as a purchaser, had "an insurable interest" under the new policy, and the question being answered affirmatively, coverage was excluded under the terms of defendant's policy. The failure to comply with 8-135 and the effect thereof upon possible coverage offered by any policy the seller of the White truck may have had—the point involved in the instant case—was not discussed. In fact, it was observed in the opinion that no claim was made that the insured (buyer) violated any of the provisions of G. S. 1947 Supp. [now K. S. A.] 8-135 so as to affect adversely his title to the White truck.

In the *Brown* case the sellers and buyer entered into a sale agreement whereby an automobile, which was subject to a chattel mortgage held by a finance company, was turned over to the buyer, but the sellers retained the registration tag, one set of keys, and the certificate of title until the buyer was accepted by the finance company, with the additional restriction the buyer was not to drive the car until the finance company substituted him in place of the sellers for the balance of the mortgage indebtedness. The buyer drove the car, in violation of the restriction, was involved in an accident,

and the car was destroyed by fire. The car was insured by the sellers against loss by fire, and the sellers sued their insurance company. Defendant's policy specifically excluded coverage when the vehicle was subject to a conditional sale which was not shown in the policy, or when the vehicle was in the possession of someone else under a conditional sale. It was held that there was a valid, conditional sale and, therefore, coverage was specifically excluded by the terms of the policy. The defendant's policy in the instant case contains no such exclusion. The effect of what is now K. S. A. 8-135 (c) (6) was not directly considered, and like *Weaver*, the decision is not particularly helpful in deciding the precise question here.

To support its contention that Willis was the "owner" under a conditional sale agreement, defendant relies on K. S. A. 8-126(n), which reads as follows:

"'Owner.' A person who holds the legal title of a vehicle, or in the event a vehicle is the subject of an agreement for the conditional sale thereof with the right of purchase upon performance of the conditions stated in the agreement and with an immediate right of possession vested in the conditional vendee . . . then such conditional vendee . . . shall be deemed the owner for the purpose of this act."

The foregoing definition is the meaning legislatively ascribed to the word "owner" as used throughout the Registration of Motor Vehicles Act, but we do not believe it was ever intended to determine ownership for insurance purposes in the sale of an automobile where there has been no assignment of title as required by the act. In other words, even if a buyer is a conditional vendee, and thus is an "owner" as defined by the statute, that fact does not free him or the vendor from the regulatory provisions of the act relating to registration, sale and transfer of a motor vehicle. For example, not only are the parties subject to K. S. A. 8-135(c) (6), but also to K. S. A. 8-135(c) (2), specifying an assignment of certificate of title shall contain a statement of all liens or encumbrances of whatever nature and kind; K. S. A. 8-127, requiring every "owner" to secure registration of a motor vehicle intended to be operated in this state; and K. S. A. 8-135(c), compelling the new "owner" to present either a bill of sale, if the motor vehicle is new, or a certificate of title properly endorsed by the seller, if the vehicle is a used one, in order to register the vehicle.

Since the enactment of what is now K. S. A. 8-135(c) (6) (L. 1937, ch. 72, §5), we have numerous decisions holding that the

statute means just what it says, and failure to comply therewith renders the sale of an automobile fraudulent and void. (*Sims v. Sugg,* 165 Kan. 489, 196 P. 2d 191; *Farmers & Merchants State Bank v. Hunter,* 166 Kan. 52, 199 P. 2d 196; *Bankers Investment Co. v. Meeker,* 166 Kan. 209, 201 P. 2d 117; *Tilson v. Newell,* 179 Kan 73, 293 P. 2d 227; *Gurley v. Broadway Sales Co.,* 184 Kan. 179, 334 P. 2d 312.) We are not unmindful of other decisions, such as *Felts v. Sugg,* 167 Kan. 488, 207 P. 2d 460, and *Crow v. Hershberger,* 170 Kan. 492, 226 P. 2d 846, where noncompliance with 8-135 was raised but held not fatal to a plaintiff's right to seek relief; but these are distinguishable, in that they were replevin actions.

We believe there are sound reasons for applying the statute to a situation where, as here, it much be determined, despite a purported sale without compliance with the transfer statute, whether or not the seller's insurance policy provides liability coverage while the automobile is being used by the buyer. The statute was enacted not only to protect the public against fraud and prevent traffic in the sale of stolen automobiles but also to lend stability and certainty in the business climate surrounding each transaction. The rights of those persons affected by a particular sale, such as a mortgagee or an innocent purchaser, are safeguarded by strict enforcement of such statute, and public policy would seem to dictate that the statute should be literally enforced for the protection of a third person who suffers injury at the hand of a buyer (driver) who has obtained possession and control of the automobile from the seller but has not received an assigned certificate of title as required by statute. In such case, the injured party should be entitled to the protection of the seller's insurance if the buyer is operating the automobile as an additional insured under the seller's omnibus clause. If per chance, as here, the buyer also has coverage under a separate policy issued to him on another automobile as the driver of a non-owned automobile, the injured party is protected under the buyer's policy as well. Where, however, the buyer has no insurance, the protection afforded by the seller's policy becomes of extreme importance. Without it, the injured party has no protection from either the buyer or seller. Yet this would be the result if we disregard the mandate of the statute and say that the purported buyer, rather than the seller, is the owner of the automobile. Of course, if the statute has been complied with, the injured party can look only to the buyer and any coverage he may have under either an

existing policy or a new policy, for the seller is no longer the owner. In such case, the seller's policy would provide no coverage under its omnibus clause, because the use of the automobile by the buyer would be by virtue of his ownership and right to control rather than by permission of the seller. The seller would no longer be in a position to grant or withhold that permission. (*Haynes v. Linder,* [Mo. App.] 323 S.W. 2d 505.)

For the above reasons we are compelled to conclude that the provisions of K. S. A. 8-135 (*c*) (6), making a sale of a vehicle registered under the laws of this state without the assignment of the certificate of title fraudulent and void, cannot be disregarded. Although the transaction had all the earmarks of a conditional sale (*Brown v. Tri-State Ins. Co.,* supra), because of the parties' failure to comply with the statute, Willis did not become the owner of the Plymouth; consequently, Shaw remained the owner within the meaning of the "owned automobile" coverage under defendant's policy.

The same result would obtain even if we regard the transaction as an executory contract of sale. (See dissent in *Brown v. Tri-State Ins. Co.,* supra.) In such case, the sale was not consummated, and there was no transfer of title, because the seller was not obligated to assign the certificate of title until the conditions of sale had been satisfied. The use of the automobile pending consummation of the sale was, under such circumstances, clearly by permission and consent of the seller. (*Allstate Insurance Co. v. Hartford Accident & Ind. Co.,* [Mo. App.] 311 S. W. 2d 41.)

A nearly identical factual situation to that in the instant case was before the United States District Court for the Western District of Missouri in *Western Fire Ins. Co. v. Hawkeye-Security Ins. Co.,* 213 F. Supp. 744. That court, applying Kansas law, G. S. 1957 Supp. [now K. S. A.] 8-135 (*c*) (6), and citing many of our cases where the statute has been strictly applied, held an agreement between the seller and buyer to delay assignment of title was an executory contract for the sale of the automobile, and the sale was not complete until the certificate of title was actually endorsed and delivered by the seller to the buyer; hence, the automobile was being driven by the purported buyer at the time of the collision with the knowledge and consent of the seller and was within the coverage of the seller's liability policy.

This is not to say that a purported buyer who obtains a new policy is without an insurable interest, although there has not been

full compliance with the transfer statute. *Weaver v. Hartford Fire Ins. Co.,* supra, appears to have settled that question, at least as to insurance against loss of the vehicle itself. To that extent, our holdings in *Morris v. Firemen's Ins. Co.,* 121 Kan. 482, 247 Pac. 852, 52 A. L. R. 696, *Bradley v. Retailers Fire Ins. Co.,* 126 Kan. 27, 267 Pac. 23, *Barton v. Mercantile Ins. Co.,* 127 Kan. 271, 273 Pac. 408, that a buyer of an automobile who fails to comply with our former transfer statutes (L. 1921, ch. 69, §§15, 16; R. S. 1923, §§8-117, 8-118) has no insurable interest, may be questionable precedent. With respect to automobile liability insurance, there is authority that the general rule requiring an insured to have an insurable interest is satisfied by the insured's possible exposure to liability for damages incident to the use and operation of the automobile and does not depend upon his legal or equitable title in the insured vehicle. (7 Am. Jur. 2d, Automobile Insurance §§11, 12, 13; Anno. 1 A. L. R. 3d 1193; Couch on Insurance 2d §24:159.)

Whether or not Willis had a separate insurable interest in the Plymouth is not important in this case, because we are concerned only with the coverage afforded under the omnibus clause of the seller's policy. An omnibus clause in a liability policy is for the purpose of covering a group of persons who may or may not have an insurable interest at the time the policy is written. It is not essential that the driver have an independent insurable interest in the automobile in order for him to be an additional insured under an omnibus clause and be indemnified for injury caused to others. (7 Am. Jur. 2d, Automobile Insurance §13, §109, *et seq.;* Couch on Insurance 2d §24:159.)

Having determined that Shaw remained the owner of the Plymouth for purposes of coverage under defendant's policy, we likewise hold that under the omnibus clause Willis was using the automobile with the permission of Shaw.

The word "permission" as used in an omnibus clause ordinarily connotes the right or power to grant or withhold the privilege or license embodied in the term itself. As a general rule, in order for a person's use and operation of an automobile to be within the meaning of an omnibus clause extending liability coverage to one using the same with the permission of the named insured, the latter must own the vehicle, or have such an interest in it, that he is entitled to the possession and control of the vehicle and thus be in a position to give such permission. (*Haynes v. Linder,* supra;

*Allstate Insurance Co. v. Hartford Accident & Ind. Co.,* supra; *Didlake v. Standard Ins. Co.,* [C. A. 10 Okla.] 195 F. 2d 247, 33 A. L. R. 2d 941; *Whitney v. Employers Ind. Corp.,* 200 Iowa 25, 202 N. W. 236, 41 A. L. R. 495; *Farm Bureau Mut. Ins. Co. v. Emmons,* 122 Ind. App. 440, 104 N. E. 2d 413; *Va. Auto Mut. Ins. Co. v. Brillhart,* 187 Va. 336, 46 S. E. 2d 377; 45 C. J. S., Insurance § 829c (2) (b) bb; 7 Am. Jur. 2d, Automobile Insurance § 115; Annos. 72, A. L. R. 1390, 106 A. L. R. 1255, 126 A. L. R. 549.)

In the cases where the question has been dealt with directly in regard to a conditional sale, it appears that the vendee's use of the automobile is by virtue of his ownership thereof rather than by reason of the consent or permission of the conditional vendor, and therefore the vendee is not an additional insured under the vendor's omnibus clause. (*United Fire and Casualty Co. v. Perez,* _____ Colo. _____, 419 P. 2d 663; *Farm Bureau Mut. Ins. Co. v. Emmons,* supra; *Whitney v. Employers Ind. Corp.,* supra; *Va. Auto Mut. Ins. Co. v. Brillhart,* supra; Anno. 36 A. L. R. 2d 673.) The rule is well stated in Couch on Insurance 2d §45:383:

"The rule applicable in the case of absolute sales is likewise applicable to conditional sales, so that the vendor is not regarded as giving permission to the vendee to operate the automobile and the vendor's insurer is therefore not liable by virtue of the omnibus clause; for as long as the conditional vendee has the right to possession he does not operate the car by the permission of the vendor. . . ."

When, however, a sale is so defective as to be void or a nullity because of noncompliance with mandatory provisions of a statute, there is well-reasoned authority that the general rule above stated does not obtain. In such instance the purported seller remains the owner, and therefore has the power to grant permission to the buyer to use the car, thus bringing the buyer within the scope of the seller's omnibus clause as an additional insured. (*Sabella v. American Indemnity Company,* [Mo.] 372 S. W. 2d 36; *Allstate Insurance Co. v. Hartford Accident & Ind. Co.,* supra; *Haynes v. Linder,* supra; *Harbor Ins. Co. v. Paulson,* 135 Cal. App. 2d 22, 286 P. 2d 870; *Brewer v. DeCant,* 167 Ohio St. 411, 149 N. E. 2d 166; *Garlick v. McFarland,* 159 Ohio St. 539, 113 N. E. 2d 92; *Insurance Company v. Storm,* 200 Va. 526, 106 S. E. 2d 588; Couch on Insurance 2d §45:386.) Representative of these cases is *Sabella v. American Indemnity Co.,* supra, where it was held that until a certificate of title, properly assigned, is delivered by the seller to

the buyer, the buyer does not become the owner of the automobile; and when the seller delivers the automobile to the buyer without also delivering to him a certificate of title, he thereby permits the buyer to use the vehicle, making the buyer an additional insured.

In the instant case Shaw remained the owner under the terms of defendant's policy, and by delivering the car to Willis without an assigned certificate of title, contrary to the statute, thereby permitted Willis to use the vehicle as an additional insured within the omnibus clause.

Plaintiff's policy provided coverage for Willis in the use of an "owned" or "non-owned automobile." The latter term was defined in the policy as "an automobile . . . not owned by or furnished for the regular use of either the named insured or any relative, other than a temporary substitute automobile; . . ." The record fails to disclose that the policy contained an automatic insurance clause for a replacement vehicle, such as was present in the *Weaver* case, nor did Willis ever receive a certificate of title; whereas in *Weaver,* the buyer, subsequent to the loss, received a bill of sale and certificate of title for the replacement vehicle, and consequently brought himself within the automatic insurance clause. For these reasons, as well as those previously set forth in this opinion, defendant's argument that Willis was the "owner" of the Plymouth under the terms of plaintiff's policy cannot be sustained. The result is that Willis was covered under the plaintiff's policy as the driver of a "non-owned automobile" and by the defendant's policy as an additional insured under the omnibus clause.

What was the extent of coverage under each policy? Each contained nearly identical "other insurance" clauses making the policy applicable to coverage with that afforded by any other insurance on a pro rata basis, except that plaintiff's policy provided:

". . . the insurance with respect to a temporary substitute automobile or *non-owned* automobile shall be excess insurance over any other valid and collectible insurance. . . ." (Emphasis added.)

Defendant urges that it should be liable on a pro rata basis. Plaintiff contends, and we think rightly so, that because of the "excess insurance" provision in its policy, defendant's policy offered primary coverage.

No Kansas cases on the point have been brought to our attention, and our limited research has revealed none. An exhaustive

annotation, however, is found in 76 A. L. R. 2d 502 in which the author has collected numerous decisions from courts throughout the land and summarized their holdings as follows:

". . . Thus, if the non-ownership coverage offered by one of the policies involved is of the 'excess insurance' type, the conclusion is generally reached—no matter how various the reasoning adopted in support of it in the different cases may be—that the *policy issued to the owner* of the vehicle is the 'primary' policy, and the company issuing it is liable up to the limits of the policy without apportionment, although the policy contains a 'prorata' clause. To state the proposition in another way: if one policy has been issued to the owner of the vehicle causing damage, and another covers the same loss by virtue of the relationship to the accident of one who is not the vehicle owner, the latter's insurer, at least where its coverage is of the 'excess insurance' variety, is in the favorable position and need not assume any of the loss, although the vehicle owner's policy contains a 'prorata' clause. . . ." (p. 505.)

We have carefully reviewed the cases in the annotation and find they furnish solid precedent for the statements quoted. (Also, see 7 Am. Jur. 2d, Automobile Insurance §202; 8 Appleman, Insurance Law and Practice §4914; Couch on Insurance 2d §§62:71, 62:72.)

The rationale for the rule that the owner's insurer has primary liability is variously stated. In *Safeco Ins. Co. v. Pacific Indem. Co.,* 66 Wash. 2d 38, 401 P. 2d 205, where the "other insurance" clauses of the separate policies covering the owner and driver were substantially identical to those in the instant case, the court quoted from Appleman, *supra,* to the effect that a non-ownership clause with an "excess" coverage provision does not constitute other valid and collectible insurance within the meaning of a primary policy with an omnibus clause. A decision frequently relied on by other courts is *American Automobile Ins. Co. v. Republic Indemnity Co.,* 52 Cal. 2d 507, 341 P. 2d 675, which involved policies that contained identical "other insurance" clauses, each providing for pro rata coverage with an "excess" coverage provision when the named insured was driving a non-owned automobile. After citing cases holding the owner's insurer primarily liable within the limits of its policy, the court stated:

"These cases are based on the reasoning that the policy of the owner is other insurance within the meaning of the excess provision of the driver's policy and that therefore this provision is effective; they do not consider the driver's policy as other insurance within the meaning of the prorate provision of the owner's policy and accordingly treat the prorate provision as not operative. . . .

"It is impossible, and could not have been intended, that the excess provision would govern with respect to the insurance of the driver and that at the same

time the prorate provision would control with respect to the insurance of the owner because proration of the loss and treating the driver's insurance as excesss over the insurance of the owner obviously lead to inconsistent results. The only construction of the 'other insurance' clause under which both its parts will be meaningful is that the *excess* provision alone controls in every situation which falls within its terms, such as when a person is driving the car of another and both the driver and the owner have insurance, and that the *pro-rate* provision alone governs in all other situations, for example, when more than one policy has been issued to the same person. When the driver's insurance is excess, it necessarily follows that the insurance of the owner is primary, and therefore the owner's insurer must bear the entire loss to the extent of the limits of the policy." (pp. 512, 513.)

Other decisions in which the foregoing rationale was deemed controlling, and the same conclusion reached, are *Turpin v. Standard Reliance Ins. Co.*, 169 Neb. 233, 99 N. W. 2d 26, and *Motorists Mutual Ins. Co. v. Lumbermen's Mutual Ins. Co.*, 1 Ohio St. 2d 105, 205 N. E. 2d 67.

In view of what must be regarded as the overwhelming weight of authority, we hold that defendant was primarily liable for the full amount of the settlement paid by the plaintiff.

Defendant further urges that plaintiff acted as a mere volunteer in paying the settlement and, under the rule that there is no right of contribution between co-insurers after one has paid in full, cannot recover, citing 7 Am. Jur. 2d, Automobile Insurance 203; Anno. 21 A. L. R. 2d 611; 6 Blashfield, Cyclopedia of Automobile Law and Practice §4107. The above rule, however, is inapplicable to a situation such as here involving subrogation rights of a secondary insurer against a primary insurer. In a carefully reasoned opinion, *Surety Co. v. Casualty Co.*, 157 Ohio St. 385, 105 N. E. 2d 568, 31 A. L. R. 2d 1317, the court held:

"It is well settled that one secondarily liable, who is forced to pay because of the refusal, or failure after demand, of the one primarily liable to discharge the obligation, has the right of indemnity from the one primarily liable. (Citing cases:)

"Aetna [the secondary insurer] had an interest to protect and a legal obligation to pay. In effecting settlement and making payment under such circumstances Aetna was not a volunteer.

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"Therefore, applying the principles of equity and natural justice, Aetna has the equitable right to recover from Buckeye [the primary insurer] and it also has the right to recover by way of subrogation under the policy." (pp. 392, 393.)

The court distinguished *Auto Ins. Co. v. Cas. Co.*, 140 Ohio St. 79,

67 N. E. 2d 906, which dealt with policies of both companies containing "other insurance" clauses which provided for prorating claims:

". . . One company made full settlement without being forced to do so by court action. The case did not involve primary and secondary liability. Subrogation was not involved. Under those circumstances, the court held that there was no legal liability requiring the settling company to make the payment and consequently that it was a volunteer. The decision in that case is not disturbed. It is not applicable to the facts of the instant case." (p. 394.)

(For other cases recognizing the secondary insurer's right of subrogation see Anno. 31 A. L. R. 2d 1324.) Here, the plaintiff's policy contained a standard subrogation clause, and the plaintiff, as secondary insurer, was entitled to recover the amount of the settlement from defendant, the primary insurer.

In the cross appeal plaintiff contends the district court erred in failing to allow recovery of its attorneys' fees in effecting a settlement with the injured party, and relies on the provisions of K. S. A. 40-256. The basis for the district court's action was "because there is a bona fide dispute here with merit on both sides." While we have grave doubt that the statute was intended to apply to an action between primary and secondary insurers, we find no compelling reason under the facts and circumstances of this case to disturb the trial court's conclusion on the point. (*Parker v. Continental Casualty Co.*, 191 Kan. 674, 383 P. 2d 937.) In our opinion, plaintiff, under its policy, had a contractual duty with its insured (Willis) to defend the lawsuit instituted by the injured party, and such duty was personal and distinct from indemnification. Accordingly, plaintiff had no right of contribution from the defendant for attorneys' fees incurred in making such defense, notwithstanding that the defendant may also have had a duty to defend Willis as an omnibus insured. (*United States Fidelity & Guar. Co. v. Tri-State Ins. Co.*, [C. A. 10] 285 F. 2d 579.)

For the reasons heretofore assigned, the judgment of the district court is affirmed in all respects.