(20 P.3d 743)

No. 83,670

AMERICAN STATES INSURANCE COMPANY, *Appellee,* v. FARMERS ALLIANCE MUTUAL INSURANCE COMPANY, *Appellant.*

Opinion filed April 6, 2001.

*Zackery E. Reynolds,* of The Reynolds Law Firm, P.A., of Fort Scott, for appellant.

*Blake Hudson,* of Hudson & Mullies, L.L.C., of Fort Scott, for appellee.

Before MARQUARDT, P.J., ELLIOTT, J., and PADDOCK, S.J.

MARQUARDT, J.: Farmers Alliance Mutual Insurance Company (Farmers) appeals the trial court's ruling that it was required to provide automobile liability insurance coverage to Mychael and Anna May (Mays). We reverse.

On December 20, 1997, the Mays, neighbors of Angela How, agreed to purchase How's car for $500. The Mays paid How $300

and took possession of the car on December 20. They agreed to pay the remaining $200 at a later time. How had insured the car with Farmers.

December 20 was a Saturday. How planned to remove her tags from the car on Monday, December 22, when the courthouse was open and sign the title over to the Mays. How did not discuss insurance with the Mays.

On the evening of December 20, the Mays drove the car to Missouri and were involved in a head-on collision with a car driven by Vernon Guss. Mychael was killed. The other occupants of both vehicles sustained serious injuries. Guss' car was insured by American States Insurance Company (ASI). The Mays did not have insurance on the car at the time of the accident.

Anna paid How the remaining $200 on the purchase price of the car. How gave the car title to Anna on January 16, 1998. How requested return of the title so that she could recover her license plate from the demolished car which was being held at a salvage yard.

In March 1998, ASI filed a petition for declaratory judgment and asked the trial court to determine the liability of ASI and Farmers for the accident. ASI asserted that the Mays were insured under How's liability insurance policy and claimed that they were permissible users of How's car.

Depositions were presented to the trial court and the parties presented closing arguments. The trial court accepted ASI's findings of fact and conclusions of law. The trial court found that How's policy with Farmers provided liability coverage to the Mays. The trial court held that the transaction between How and the Mays was a conditional sale that was contingent upon the title being transferred on Monday, December 22, 1997. The trial court ruled that both How and the Mays had an ownership interest in the car at the time of the accident, but since the Mays were uninsured, they could only operate the vehicle under How's insurance policy. Farmers timely appeals.

Farmers argues that it is not necessary for the certificate of title to physically pass between the parties for the sale to be complete. Farmers' position is that the sale is complete at the time of delivery

as long as the title is delivered within 30 days of the sale. Farmers maintains that there is no evidence in the record which would support the conclusion that the sale was conditional.

Where the controlling facts are based upon written or documentary evidence by way of pleadings, admissions, depositions, and stipulations, the appellate review is de novo. *Giblin v. Giblin*, 253 Kan. 240, 253, 854 P.2d 816 (1993).

A conditional sale is one in which vesting of the title in the purchaser is subject to a condition precedent, or in which its revesting in the seller is subject to a failure of the buyer to comply with a condition subsequent. *Brown v. Tri-State Ins. Co.*, 177 Kan. 7, 9-10, 274 P.2d 769 (1954).

No particular words or forms of expression are necessary to create a conditional sale. Any words which indicate an intention to annex a condition to the sale will be sufficient. Such phrases, however, as "on condition," "provided," and "if it shall so happen," are found in constant use in the making of conditional sales, and, if employed, will usually remove any doubt as to the sale or transfer being conditional. However, if it is the intention of the parties to make the sale dependent upon the happening of some event or the performance of some collateral obligation, that makes it a conditional sale, no matter what language was used. *Brown*, 177 Kan. at 10.

The general rule is that the intention of the parties as shown by the terms of the agreement determines whether a contract is conditional. The whole contract is to be considered, and no detached term or condition should be given prominence or effect over another. The question of intent is a fact determination. *Brown*, 177 Kan. at 10.

Anna stated that she believed they bought the car from How on December 20. Anna "assumed" that Mychael took care of all the details of the purchase. As far as Anna was concerned, she and Mychael owned the car on the morning of December 20. Anna stated that if she and Mychael were not able to deliver the $200 balance to How, they would not have returned the car.

ASI asked How, "So you were going to give the title to them [the Mays] actually before they paid the entire purchase price?"

How responded, "Oh yes, it was sold. I had a new vehicle, I didn't need it [the car sold to the Mays]." How did not believe that she needed to give the Mays permission to use the car, since "[i]t was their vehicle, they bought it." How understood that the car belonged to the Mays once she gave the keys to Mychael.

There was no written contract; however, the intent of the parties is clear from their testimony. There was no conditional language present in their exchange. How and Anna repeatedly testified that the car was sold and the transaction was complete.

ASI maintains that the sale was not complete because it was subject to the transfer of the title on December 22. ASI also contends that the Mays could not have been the legal title holder for insurance purposes because the car still bore How's license plate.

"It shall be unlawful for any person to buy or sell in this state any vehicle required to be registered, unless, at the time of delivery thereof or at a time agreed upon by the parties, not to exceed 30 days, inclusive of weekends and holidays, after the time of delivery, there shall pass between the parties a certificate of title with an assignment thereof. The sale of a vehicle required to be registered under the laws of this state, without assignment of the certificate of title, is fraudulent and void, unless the parties shall agree that the certificate of title with assignment thereof shall pass between them at a time other than the time of delivery, but within 30 days thereof." K.S.A. 2000 Supp. 8-135(c)(7).

The title was delivered to Anna on January 16, 1998, within 30 days of the sale. The sale of an automobile is complete at the time of delivery as long as the title is delivered within 30 days of the sale. K.S.A. 2000 Supp. 8-135(c)(7). See *Heshion Motors, Inc. v. Trinity Universal Ins. Co.*, 229 Kan. 412, 415, 625 P.2d 437 (1981).

ASI maintains that the actions of How and the Mays indicate an agreement was made so that the title would not be effective until at least December 22, when Mychael could register the title in his name. The record on appeal discloses no such agreement.

ASI points out that the Mays could not have legally used How's license plate if ownership of the car changed hands. Additionally, the Mays would have been driving an uninsured vehicle. ASI contends that the only logical conclusion is that the parties did not intend to commit any violation of the law, but instead intended for How to own the car until Monday.

The Mays had not owned a car for over 1 year prior to purchasing How's vehicle. Anna thought that she and Mychael would have tagged the car after his next paycheck. Anna also "guessed" that Mychael would insure the vehicle in their name.

How assumed that the Mays would obtain insurance coverage for the car on Monday, December 22. How was not sure how her insurance coverage would be affected by the sale. She stated, "All I knew is I was selling it and I was getting a new car." How acknowledged that she left her tag on the car so that the Mays could drive the vehicle before Monday. We see no evidence in the record on appeal that the parties intended to delay transfer of ownership to allow the Mays to complete registration and insurance paperwork.

The testimony provided by How and Anna clearly shows that both parties intended the ownership of the vehicle to be transferred on December 20. The transfer of the title and the presence of How's tags on the car do not make this a conditional sale. The trial court erred when it ruled that How and the Mays engaged in a conditional sale.

ASI relies on *Farmers Ins. Co. v. Schiller*, 226 Kan. 155, 597 P.2d 238 (1979); however, that case is clearly distinguishable. In *Farmers*, the parties agreed that the sale of a vehicle would be completed when the purchaser returned a borrowed battery and the tag the following day. The seller purposely left the tags on the vehicle as an indication of ownership. Those are not the facts of the instant case.

Insurance policies are contracts. The interpretation and construction of a contract is a question of law. A trial court's interpretation of a contract may be reviewed by this court de novo. *AMCO Ins. Co. v. Beck*, 261 Kan. 266, 269, 929 P.2d 162 (1996).

There are no Kansas cases that support the trial court's conclusion that automobile insurance automatically transfers from the seller of a car to the buyer until the buyer insures the purchased car. In general, the rule is that the buyer of a vehicle insures the car under existing automobile insurance.

How's insurance policy has not been included with the record on appeal. However, we are confident that there is no clause in

the policy which requires Farmers to insure vehicles which had been sold because the policyholder no longer has an insurable interest.

We do not believe that the trial court had the authority to rewrite How's insurance policy. The Mays owned the car on December 20, 1997. At that time, How's insurance no longer applied. We decline to require How's insurance company to provide coverage to the Mays.

Reversed.