(618 P.2d 327)

No. 50,988

HESHION MOTORS, INC., *Appellee,* v. TRINITY UNIVERSAL INSURANCE COMPANY, *Appellant.*

Opinion filed October 24, 1980.

*Ron Bodison, Barry W. McCormick,* and *J. Eugene Balloun* of Payne & Jones, Chartered, of Olathe, for the appellant.

*Robert B. Van Cleave* of McAnany, Van Cleave & Phillips, P.A., of Kansas City, for the appellee.

Before FOTH, C.J., SWINEHART, J., and HARMAN, C.J. Retired, sitting by designation.

HARMAN, C.J. Retired: This is a declaratory judgment action in which an insurer appeals from a ruling made on summary judgment that its policy provided coverage for a motor vehicle which was stolen from the policyholder by means of false pretenses. The primary issue is whether the insured had "full and valid title" prior to loss of the automobile, within the meaning of an exclusionary clause in the policy, despite the fact certificate of title had not been assigned to the insured.

The facts, some of which are in dispute, are as follows: Appellee Heshion Motors, Inc., was a dealer in new and used vehicles in Johnson County, Kansas. Its dealer's policy with appellant Trinity Universal Insurance Company of Kansas, Inc., covering its automobiles at four locations, initially excluded coverage for theft by false pretenses or deception occasioned by anyone entrusted with possession of a vehicle, but an endorsement supplied this coverage subject to the requirement that "the named insured had full and valid title to such covered automobile prior to such loss."

Sometime in June or July, 1976, appellee Heshion negotiated with Faddis Leasing Corporation for the purchase by Heshion of

a 1973 Jaguar automobile. At that time, the automobile was leased by Faddis to one George C. Etherington, Salina, Kansas.

Consonant with this agreement to purchase, Etherington delivered the Jaguar to appellee on either August 3rd or 4th, 1976, a date in dispute by reason of the following: The record contains a letter dated August 3, 1976, by Etherington to appellee in which he stated, among other things: "Today I had my driver bring my Jaguar in to your place of business." On November 29, 1978, Mr. Etherington signed an affidavit stating that, in preparation for delivery of the Jaguar in question, he drafted the aforementioned letter dated August 3, 1976, but that at the time of making the affidavit he had no independent recollection of the exact date of delivery of the automobile to Heshion. According to an affidavit signed October 18, 1978, by appellee's chief executive officer, he was present at the time Etherington delivered the Jaguar to appellee and he recalls that delivery occurred on the same day upon which a check was drawn for its payment, which was August 4, 1976.

The record contains a copy of appellee's check No. 0584 dated August 4, 1976, in the amount of $6,000 payable to Faddis Leasing Corporation. There is no evidence as to the exact date this check was delivered to Faddis. We are told the various endorsements on the back of the check are not wholly legible, although apparently it was deposited for collection on August 12, 1976.

On August 10, 1976, while the Jaguar was in appellee's possession, its employees permitted two persons, who allegedly were interested in purchasing the automobile, to test drive it. This pair disappeared without returning the Jaguar to appellee. Later, the vehicle was discovered, completely stripped, in Denver, Colorado.

On August 19, 1976, Faddis Leasing Corporation executed and caused to be notarized its assignment to appellee on the reverse side of the certificate of title to the Jaguar. Appellant does not concede delivery of this instrument to appellee was made on the 19th, as claimed by appellee in its statement of facts in support of its motion for summary judgment. By letter verified by appellee's chief executive officer on February 13, 1976, addressed to the trial judge, with copy to counsel for each litigant, this is stated:

"Though it has been several years ago, I recall with reasonable certainty that the certificate of title was in my possession on behalf of Heshion on the same date that

it was assigned by Faddis Leasing Co., which I recall was August 19, 1976. I recall this specifically as we were concerned that the certificate of title to a stolen car had not yet arrived. I recall that we were notified by Faddis Leasing Co. that they had the title and that it was, or was about to be assigned to Heshion. We either picked it up or had it delivered the same day, which would have been August 19, 1976."

In due course in this lawsuit, each side moved for summary judgment, each disputing some part of the other's statement of the facts. In considering these motions, the trial court had before it statements, affidavits and exhibits reflecting the facts as stated. It appears the parties were never able to agree completely on the facts and formal discovery was never attempted. The court ruled that the language in the restriction respecting title was ambiguous and the appellee's "'possession, fully paid for, and with the right to sell and the ability to give good title'" entitled it to coverage under the policy. The court held that it was immaterial whether the Jaguar was delivered to appellee on August 3rd or on August 4th, 1976, and whether the properly assigned certificate of title was delivered to it on August 19th (so as to come within our certificate of title law) or a day or so thereafter. The trial court further ruled that no material issue of fact existed.

Appellant first contends the trial court erred in ignoring the impact of K.S.A. 1979 Supp. 8-135(c)(7) in determining whether coverage existed. This statute provides in pertinent part:

"It shall be unlawful for any person to buy or sell in this state any vehicle required to be registered hereunder, unless, at the time of delivery thereof or at a time agreed upon by the parties, not to exceed fifteen (15) days after the time of delivery, there shall pass between the parties such certificate of title with an assignment thereof, as herein provided, and the sale of any vehicle required to be registered under the laws of this state, without the assignment of such certificate of title, shall be fraudulent and void, unless the parties shall agree that the certificate of title with an assignment thereof shall pass between them at a time other than the time of delivery, but within fifteen (15) days thereof."

Kansas cases are legion holding that, where a vehicle is delivered, failure to comply with the foregoing renders sale of the particular vehicle fraudulent and void, and title remains in the seller. See, e.g., Gicinto v. Credithrift of America, 219 Kan. 766, 549 P.2d 870 (1976); Melton v. Prickett, 203 Kan. 501, 456 P.2d 34 (1969); Maryland Cas. Co. v. American Family Insurance Group, 199 Kan. 373, 429 P.2d 931 (1967).

The purpose of K.S.A. 8-135 has been variously stated. In

*Farmers Ins. Co. v. Schiller,* 226 Kan. 155, Syl. ¶ 2, 597 P.2d 238 (1979), we find this:

"The purpose of K.S.A. 8-135 is to require the issuance of a certificate of title for every vehicle required to be registered under the act, and to provide a means by which one may readily ascertain who is the owner of a motor vehicle, thus protecting the public from the evils arising from the unregulated use, transfer, and sale of such a vehicle."

In *Maryland Cas. Co. v. American Family Insurance Group,* 199 Kan. at 379, this is said:

"The statute was enacted not only to protect the public against fraud and prevent traffic in the sale of stolen automobiles but also to lend stability and certainty in the business climate surrounding each transaction."

Thus, we see that the term "title," with respect to an automobile sold and delivered in Kansas, has come to have a very definite meaning. Noteworthy at this point is the fact that K.S.A. 1979 Supp. 8-126(*n*), defining "owner" under the Registration of Vehicles Act, distinguishes between classes of "owners"—those with legal title and those who purchase pursuant to a conditional sales agreement, *i.e.,* right to possession and purchase upon performance of the contract provisions, which section, it has been held, was not intended to determine ownership for insurance purposes where there has been no assignment of title as required by the act. *Maryland Cas. Co. v. American Family Insurance Group,* 199 Kan. at 378.

It must be recognized, however, that one may actually own an automobile and thus have an insurable interest in it and yet not have legal evidence of title, this on the theory that anyone has an insurable interest in property who derives a benefit from its existence or would suffer loss from its destruction, whether or not he has any title to the property. *Weaver v. Hartford Fire Ins. Co.,* 168 Kan. 80, 211 P.2d 113 (1949).

But here we are not concerned simply with an insurable interest. Insurance coverage was extended here only where there was full and valid title *prior to the loss,* which goes beyond K.S.A. 1979 Supp. 8-135(*c*)(7). (At this point, we may further note that this policy covered interests less than full title with respect to the other risks insured against in the policy; namely, collision, fire, lightning, transportation, supplemental benefits and ordinary theft. For example, coverage is extended to all interests in consigned vehicles.)

The purpose of such an exclusionary clause with respect to

theft by deception, an obviously high risk in a dealer's automobile policy, is undoubtedly similar to that of 8-135, namely, to lend stability and certainty in the insurance industry as to the coverage of a particular insurer and to furnish means for ready ascertainment of ownership of a vehicle. Another purpose may well be served—provision for auditable records to verify ownership so that the monthly or quarterly premiums for insurance (monthly here) may be commensurate with the potential total risk. Illustrative of these purposes, without any implication of wrongdoing on anyone's part, might be the situation revealed by appellee's counsel on oral argument—the delay in delivery of an assigned certificate of title here was aggravated by the fact that lessee Etherington had it in his possession.

The term "full and valid title" certainly cannot be said to import any lesser degree or character of title than that prescribed for legal ownership under K.S.A. 1979 Supp. 8-135(c)(7). It does violence to plain words, both as a legal and a practical matter, to say that the exclusionary clause is ambiguous and uncertain, and therefore subject to construction slanted toward the insured. The clause is clear and precise. Appellee Heshion did not have title to the Jaguar prior to its loss. No reason appears why the exclusionary clause was not applicable. We hold that it was.

The judgment is reversed and the cause is remanded with directions to enter judgment for appellant declaring that no coverage existed under its policy.