No. 50,988

HESHION MOTORS, INC., *Appellee,* v. TRINITY UNIVERSAL INSURANCE COMPANY, *Appellant.*

(625 P.2d 437)

Opinion filed March 25, 1981.

*Robert B. Van Cleave,* of McAnany, Van Cleave & Phillips, P.A., of Kansas City, argued the cause and was on the brief of appellee.

*Ronald L. Bodinson,* of Payne & Jones, Chartered, of Olathe, argued the cause and *Barry W. McCormick* and *J. Eugene Balloun,* of the same firm, were on the brief of appellant.

The opinion of the court was delivered by

HERD, J.: This is a declaratory judgment action to determine the issue of coverage for a loss suffered by appellee under an insurance contract with appellant. The issue is whether the insured had "full and valid title" at the time of the loss of the automobile, giving coverage under the policy. The trial court entered summary judgment for Heshion Motors, Inc., from which Trinity appeals.

In June of 1976 Heshion Motors agreed to purchase a 1973 Jaguar automobile from Faddis Leasing Corporation for $6,000. At the time the agreement was entered into George Etherington had possession of the car as lessee. Etherington delivered the Jaguar to Heshion Motors on either August 3rd or 4th, 1976. The date is in dispute. On August 10, 1976, while the Jaguar was in the possession of Heshion, a salesman permitted two potential purchasers to test drive the car. The purchasers didn't return with the vehicle. It was soon discovered, fully stripped, in Denver, Colorado. Heshion wrote Faddis a check for the car on August 4,

1976. The evidence is unclear as to the date of delivery of the check or the date it was deposited.

Following the theft, on August 19, 1976, the certificate of title to the Jaguar was signed and notarized by Faddis. The date of its delivery is in dispute.

Heshion was the owner of an insurance policy issued by Trinity which contained a specific "theft by false pretenses" endorsement excluding coverage unless Heshion had "full and valid title" to the automobile at the time of the loss. Following the theft Heshion notified Trinity of the loss. Trinity denied coverage on the ground Heshion did not have "full and valid title" on the date of loss—August 10.

Thereafter, Heshion sued, seeking a declaratory judgment on the issue of Trinity's liability under the "theft by false pretenses" endorsement. Both parties filed motions for summary judgment. The trial court sustained Heshion's motion ruling the language in the exclusion with regard to title was ambiguous and appellee's "possession, fully paid for, and with the right to sell and the ability to give good title" entitled it to coverage under the policy. The trial court also held it was immaterial whether the Jaguar was delivered to appellee on August 3rd or 4th, 1976, or whether the assigned certificate of title was delivered to appellee on August 19th or thereafter. The court further ruled there was no material issue of fact remaining.

On appeal to the Court of Appeals, *Heshion Motors, Inc. v. Trinity Universal Ins. Co.,* 5 Kan. App. 2d 432, 618 P.2d 327 (1980), the trial court judgment was reversed and judgment entered for Trinity. We accepted review.

The Honorable Chief Judge Harman, retired, stated in the Court of Appeals opinion at pages 434-36:

"Appellant first contends the trial court erred in ignoring the impact of K.S.A. 1979 Supp. 8-135(c)(7) in determining whether coverage existed. This statute provides in pertinent part:

'It shall be unlawful for any person to buy or sell in this state any vehicle required to be registered hereunder, unless, at the time of delivery thereof or at a time agreed upon by the parties, not to exceed fifteen (15) days after the time of delivery, there shall pass between the parties such certificate of title with an assignment thereof, as herein provided, and the sale of any vehicle required to be registered under the laws of this state, without the assignment of such certificate of title, shall be fraudulent and void, unless the parties shall agree that the certificate of title with an assignment thereof shall pass between them at a time other than the time of delivery, but within fifteen (15) days thereof.'

"Kansas cases are legion holding that, where a vehicle is delivered, failure to comply with the foregoing renders sale of the particular vehicle fraudulent and void, and title remains in the seller. [Citations omitted.]

"The purpose of K.S.A. 8-135 has been variously stated. In *Farmers Ins. Co. v. Schiller,* 226 Kan. 155, Syl. ¶ 2, 597 P.2d 238 (1979), we find this:

'The purpose of K.S.A. 8-135 is to require the issuance of a certificate of title for every vehicle to be registered under the act, and to provide a means by which one may readily ascertain who is the owner of a motor vehicle, thus protecting the public from the evils arising from the unregulated use, transfer, and sale of such a vehicle.'

"In *Maryland Cas. Co. v. American Family Insurance Group,* 199 Kan. at 379, this is said:

'The statute was enacted not only to protect the public against fraud and prevent traffic in the sale of stolen automobiles but also to lend stability and certainty in the business climate surrounding each transaction.'

"Thus, we see that the term 'title' with respect to an automobile sold and delivered in Kansas, has come to have a very definite meaning. Noteworthy at this point is the fact that K.S.A. 1979 Supp. 8-126(*n*), defining 'owner' under the Registration of Vehicles Act, distinguishes between classes of 'owners'—those with legal title and those who purchase pursuant to a conditional sales agreement, *i.e.,* right to possession and purchase upon performance of the contract provisions, which section, it has been held, was not intended to determine ownership for insurance purposes where there has been no assignment of title as required by the act. [Citation omitted.]

"It must be recognized, however, that one may actually own an automobile and thus have an insurable interest in it and yet not have legal evidence of title, this on the theory that anyone has an insurable interest in property who derives a benefit from its existence or would suffer loss from its destruction, whether or not he has any title to the property. [Citation omitted.]

"But here we are not concerned simply with an insurable interest. Insurance coverage was extended here only where there was full and valid title *prior to the loss,* which goes beyond K.S.A. 1979 Supp. 8-135(*c*)(7). (At this point, we may further note that this policy covered interests less than full title with respect to the other risks insured against in the policy; namely, collision, fire, lightning, transportation, supplemental benefits and ordinary theft. For example, coverage is extended to all interests in consigned vehicles.)

"The purpose of such an exclusionary clause with respect to theft by deception, an obviously high risk in a dealer's automobile policy, is undoubtedly similar to that of 8-135, namely, to lend stability and certainty in the insurance industry as to the coverage of a particular insurer and to furnish means for ready ascertainment of ownership of a vehicle. Another purpose may well be served—provision for auditable records to verify ownership so that the monthly or quarterly premiums for insurance (monthly here) may be commensurate with the potential total risk. Illustrative of these purposes, without any implication of wrongdoing on anyone's part, might be the situation revealed by appellee's counsel on oral argument—the delay in delivery of an assigned certificate of title here was aggravated by the fact that lessee Etherington had it in his possession.

"The term 'full and valid title' certainly cannot be said to import any lesser

degree or character of title than that prescribed for legal ownership under K.S.A. 1979 Supp. 8-135(*c*)(7). It does violence to plain words, both as a legal and a practical matter, to say that the exclusionary clause is ambiguous and uncertain, and therefore subject to construction slanted toward the insured. The clause is clear and precise."

We accept the Court of Appeals rationale in *Heshion* but make the following modification. K.S.A. 1980 Supp. 8-135(*c*)(7) provides two methods for transferring title to a motor vehicle: the simultaneous delivery of the assigned certificate of title, which was recognized by the Court of Appeals; and a second procedure, where the parties agree at the time of delivery of the vehicle for delivery of the certificate of title at a later date, not to exceed fifteen (15) days. The latter method was improperly ignored by the Court of Appeals. We have repeatedly held in construing a statute the legislative intention is determined from consideration of the whole act, giving effect to every part, if possible. *Hessell v. Lateral Sewer District,* 202 Kan. 499, 449 P.2d 496 (1969); *In re Estate of Diebolt,* 187 Kan. 2, 14, 353 P.2d 803 (1960); *Iola B. & L. Ass'n v. Allen County Comm'rs,* 152 Kan. 365, 103 P.2d 788 (1940).

We hold both methods of transfer are available. In the cases where the parties agree to a later date for delivery of the certificate of title, not later than fifteen (15) days, and delivery is made pursuant to the agreement, a full and valid title relates back to the date of delivery of the vehicle. It was not determined at trial if there was an agreement for a late delivery of title or if the certificate of title was delivered within fifteen (15) days. These are unresolved issues of fact.

We reverse the judgment of the trial court and remand the case for further proceedings consistent with this opinion.