641 P.2d 346

Richard L. PALMER, Plaintiff-Respondent, Cross-Appellant,

v.

IDAHO PETERBILT, INC., Defendant-Appellant, Cross-Respondent.

No. 13637.

Court of Appeals of Idaho.

Feb. 23, 1982.

Terry R. McDaniel of Brady, McDaniel & Matthews, Boise, for plaintiff-respondent, cross-appellant.

Steven Matthews on oral argument.

BURNETT, Judge.

Richard L. Palmer sued Idaho Peterbilt, Inc., for breach of a contract to sell him a truck. The trial court awarded Palmer general damages but denied a claim for consequential damages. We *affirm*.

Peterbilt's appeal raises three principal issues. First, does a seller's return of a cash deposit preclude a buyer from recovering damages for the seller's repudiation? Second, under what circumstances should the trial court fix a "reasonable" contract price? Third, in determining market price, from which contract price is subtracted to compute a buyer's damages, may the court use a projected price on delivery? Palmer's cross-appeal raises other issues relating to consequential damages and attorney fees.

The buyer and seller in this case entered into a written contract for sale of a truck to be specially built by the manufacturer. The truck was stolen before it could be delivered to the buyer. The buyer and seller then entered into an oral contract for sale of another specially built truck. The buyer gave the seller a $500 cash deposit.

Numerous production delays ensued. The buyer became impatient, and the seller began to worry about the buyer's ability to pay for the truck. Finally, the seller's general manager sent a letter to the buyer, enclosing a refund of the deposit and stating that the relationship was terminated. The buyer accepted the money. However, several months later, he sued for damages.

I

█ The seller asserts that the buyer's acceptance of the refund should have been the end of the matter. The seller urges application of a host of general principles, including rescission, waiver, release, and accord and satisfaction. This case is governed by the Idaho Uniform Commercial Code ("Idaho UCC"). Idaho Code § 28–2–209 recognizes rescission and waiver. However,

Thomas R. Linville of Eberle, Berlin, Kading, Turnbow & Gillespie, Boise, for defendant-appellant, cross-respondent.

I.C. § 28–1–103 provides that existing general principles of law may only "supplement" the Idaho UCC to the extent they are not displaced. General principles will not be applied where they conflict with particular provisions of the Code. *Cf. Prince v. LeVan*, 486 P.2d 959 (Alaska 1971).

The trial court found that the seller had "breached" the oral contract; and the court referred to I.C. § 28–2–610. This section relates to anticipatory repudiation. A party aggrieved by such repudiation is entitled under section 28–2–610(b) to "resort to any remedy for breach." The remedies of an aggrieved buyer are summarized by I.C. § 28–2–711. This section specifically provides that the remedies are "in addition to recovering so much of the price as has been paid . . . ."

█ By accepting the refund in this case, the buyer simply received so much of the price as he had paid. He was still entitled to his additional remedies under section 28–2–711. The general principles of rescission or waiver cannot work a contrary result.

█ The seller further asserts that the buyer's failure to object to the repudiation constituted rescission or waiver. We disagree for three reasons. First, comment four to I.C. § 28–2–610 states the following:

Inaction and silence by the aggrieved party may leave the matter open but it cannot be regarded as misleading the repudiating party [and] the aggrieved party is . . . free to proceed at any time with his options under this section . . . .

Second, as to rescission, I.C. § 28–2–720 provides that a rescission must be clearly intended, and that even the explicit use of the term "rescission" does not discharge a claim for damages unless there is such intent. The trial court made no finding of the requisite intent in this case. Third, as to waiver, where a contract involves repeated occasions of performance, acquiescence without objection is relevant to show a waiver or modification. I.C. § 28–2–208. However, the instant case involves a single

instance of repudiation by the seller, to which the buyer failed to object. A single occasion of conduct does not fall within section 28–2–208. *See* comment four. The trial court, considering all the evidence, found no waiver. We conclude that the buyer was entitled to pursue his damage remedy under the Idaho UCC.

## II

The seller next contends that the trial court incorrectly determined the price under the oral contract. The court found that the terms of the oral contract could be ascertained from the parties' prior dealings. The seller had furnished, and the buyer had accepted, a written "quote" of $48,723 on the first truck. In his testimony, the buyer referred to differences between the first truck and the second truck. He stated that the seller informed him that the price difference would be approximately $2,000. He testified that the price of the second truck was "around $51,000." The trial court determined the contract price to be $51,000.

The seller disputed the buyer's testimony, asserting that the price was not settled because it depended upon the manufacturer's cost to the seller. The seller urges application of I.C. § 28–2–305, which provides that where the price is unsettled, it shall be a "reasonable price" at the time of delivery. At trial, the seller presented evidence that the second truck would have been delivered to the seller at a cost of approximately $50,000 and that the seller customarily would have added ten percent, resulting in a "reasonable price" of $55,000.

█ The "reasonable price" standard of section 28–2–305 is applicable only where the price is not settled by the parties. There was a conflict in the testimony of the buyer and the seller as to whether the price had been settled. The credibility of witnesses is exclusively for the trier of fact to determine. *E.g., Javernick v. Smith*, 101 Idaho 104, 609 P.2d 171 (1980). The buyer's testimony was consistent with the view that the oral contract was not wholly independent from the events which preceded it, but drew its meaning from prior dealings of the

parties. The trial court's determination of the contract price is supported by substantial and competent, although conflicting, evidence. It will not be disturbed on appeal. I.R.C.P. 52(a); *e.g., Cougar Bay Co., Inc. v. Bristol*, 100 Idaho 380, 597 P.2d 1070 (1979).

### III

The seller finally urges that the district court erred in establishing a "market price" of $57,200 under I.C. § 28–2–713(1). This section provides, in pertinent part, as follows:

> Subject to the provisions of this chapter with respect to proof of market price (section 28–2–723), the measure of damages for nondelivery or repudiation by the seller is the difference between the market price at the time when the buyer learned of the breach and the contract price . . . .

The question is, what point in time should be used in determining the "market price" under section 28–2–713(1)? The seller's "breach" in this case was a repudiation. There is a division of authority in decisions applying section 28–2–713(1) to cases of repudiation. The majority rule is that the phrase "learned of the breach" is the equivalent of "learned of the repudiation," and that market price should be fixed at the time when the buyer learned of the repudiation. *E.g., Neal-Cooper Grain Co. v. Texas Gulf Sulpher Co.*, 508 F.2d 283 (7th Cir. 1974); *Fredonia Broadcasting Corp., Inc. v. RCA Corp.*, 481 F.2d 781 (5th Cir. 1973); *Oloffson v. Coomer*, 11 Ill.App.3d 918, 296 N.E.2d 871 (1973). The minority rule is that the time when the buyer "learned of the breach" should be interpreted to mean the time for seller's performance. *Cargill, Inc. v. Stafford*, 553 F.2d 1222 (10th Cir. 1977). *See also* White & Summers, Uniform Commercial Code, 2d Ed., §§ 6–7, at 242 (1980). The minority rule better comports with I.C. § 28–2–610(a), which provides that a party aggrieved by an anticipatory repudiation may "for a commercially reasonable time await performance by the repudiating party . . . ."

However, in deciding which rule to apply here, we note that the seller's letter to the buyer, enclosing a refund of the deposit, was a clear and unequivocal statement that no performance would be forthcoming from the seller. The buyer accepted the refund. It would be anomalous to apply the minority rule, to preserve the buyer's right to await performance under section 28–2–610(a). The buyer had no reasonable expectation of such performance in this case. We conclude that the majority view, equating time of repudiation with time of breach, should be applied.

The trial court found that the buyer learned of the seller's repudiation on or about November 1, 1978. The court also implicitly found that for the buyer to obtain the truck specified in the oral contract, he would have to order it from the manufacturer; delivery would take four months; and the price would become known upon delivery. The record contains undisputed testimony that the market price of a truck actually delivered on November 1 would have been $55,000, but that the price of a truck ordered on November 1 and received four months later would be three to five percent greater. The trial court chose to apply a four percent factor. The court found that the market price of a truck ordered from the manufacturer on November 1 would have been $57,200.

Although the district court's methodology uses a figure projected to March as the market price in November, we approve the method in this case. It is a logical approach to a market situation in which price on order is not known until time of delivery. Accordingly, we uphold the district court's determination that the market price was $57,200. We also sustain the trial court's award of $6,200 in damages, representing the difference between a market price of $57,200 and a contract price of $51,000.

### IV

The buyer asserts on cross-appeal that the district court erred in denying con-

sequential damages. Idaho Code § 28–2–715(2) authorizes award of such damages resulting from the seller's breach of contract, including losses resulting from particular requirements which the seller had reason to know at the time of contracting. The seller in this case knew the buyer intended to use the truck in his business, with specially adapted trailers. Had the buyer satisfactorily proven actual losses from inability to use the trailers, section 28–2–715 might have been applicable. However, evidence in the record of actual losses was inconclusive, and the trial court found that consequential damages were not proven. This finding will not be disturbed. I.R.C.P. 52(a).

■ Finally, the buyer seeks attorney fees on appeal. The seller has raised substantial issues in the main appeal, and has responded successfully to the buyer's cross-appeal. We deem an award of attorney fees to be inappropriate.

As we close this opinion, we note that the trial court set forth several critical findings very tersely. We understand the burdens and time constraints imposed upon Idaho trial judges. However, we encourage trial courts to articulate their findings in sufficient detail to assure informed appellate review. Such findings may also be better understood and accepted by the parties.

The judgment of the district court is affirmed. No costs or attorney fees on appeal.

WALTERS, C. J., and SWANSTROM, J., concur.