(736 P.2d 949)

No. 59,369

JOSEPH AND VICKIE PERRY, *Plaintiffs/Appellants,* v. GOFF MOTORS, INC., and GENERAL MOTORS ACCEPTANCE CORPORATION, *Defendants/Appellees.*

Opinion filed April 30, 1987.

*Erich M. Shultz,* of Shultz & Associates, P.A., of Dodge City, for appellants.

*David L. Patton,* of Patton & Kerbs, of Dodge City, for appellee, Goff Motors, Inc.

*Terry J. Malone,* of Williams, Larson, Strobel, Estes & Malone, P.A., of Dodge City, for appellee, General Motors Acceptance Corporation.

Before ABBOTT, C.J., PARKS and MEYER, JJ.

MEYER, J.: Plaintiffs appeal the district court's decision denying their request for rescission of an automobile sales contract.

On May 13, 1985, plaintiffs Joseph and Vickie Perry bought a 1981 Pontiac T-1000 from the defendant, Goff Motors, Inc. Plaintiffs paid for the Pontiac by trading in a 1975 Ford van and agreeing to pay the car dealership $1,759.30. The plaintiffs financed this sum through defendant General Motors Acceptance Corporation, to whom Goff Motors assigned its interest under the contract with the plaintiffs.

Goff Motors did not deliver the Pontiac's certificate of title to the plaintiffs at the time of the sale; rather, the dealer agreed to "deliver the certificate of title . . . to purchaser personally or by registered or certified mail within fifteen (15) days from the date

of this agreement." Goff's agent claimed that on May 18, 1985, he mailed the Pontiac's certificate of title to the plaintiffs by regular mail; however, Mr. Perry testified that he never received the title in the mail.

On June 12, 1985, Mr. Perry contacted John Wentling, the business and leasing manager of Goff Motors, and told him that he had not received the title to the Pontiac and that he was concerned that his thirty-day temporary permit was about to expire. Goff Motors applied for a duplicate title, which it received in early July 1985. On July 7, Mr. Wentling called Mr. Perry and had him come to the dealership so he could personally deliver the title to him. However, Mr. Perry would not accept the title to the Pontiac and told Mr. Wentling that he wanted Goff to take the car back.

On the same day, Goff Motors sent the duplicate title to plaintiffs by certified mail. However, plaintiffs did not pick up the title from the post office and it was returned to Goff Motors two weeks later. Thereafter, Mr. Wentling left the title at Mr. Perry's place of employment.

During this period of time, Mr. Perry continued to drive the Pontiac even though the temporary permit had expired, putting a total of 3,517 miles on the vehicle. Additionally, on July 2, 1985, plaintiff made one payment to G.M.A.C. in the amount of $77.53.

The plaintiffs sued the defendants for rescission of the contract. Defendant G.M.A.C. counterclaimed for the foreclosure of its security interest. The district magistrate judge hearing the case ruled that, although Goff did not deliver a title to the plaintiffs within the fifteen-day period mentioned in the parties' contract, that was not a sufficient reason justifying its rescission. The plaintiffs appealed the magistrate's decision to the district court, which affirmed the decision, concluding that plaintiffs had failed to establish fraud justifying the rescission of the contract.

Plaintiffs contend the district court erred in concluding that the sale of the Pontiac T-1000 was not fraudulent and void under the provisions of K.S.A. 1986 Supp. 8-135(c)(7).

K.S.A. 1986 Supp. 8-135(c)(7) provides, in pertinent part:

"It shall be unlawful for any person to buy or sell in this state any vehicle required to be registered, unless, at the time of delivery thereof or at a time agreed upon by the parties, not to exceed 30 days, inclusive of weekends and

holidays, after the time of delivery, there shall pass between the parties a certificate of title with an assignment thereof. *The sale of a vehicle required to be registered under the laws of this state, without assignment of the certificate of title, is fraudulent and void, unless the parties shall agree that the certificate of title with assignment thereof shall pass between them at a time other than the time of delivery, but within 30 days thereof.* The requirements of this paragraph concerning delivery of an assigned title shall be satisfied if (i) the seller mails to the purchaser by restricted mail the assigned certificate of title within 30 days . . . ."

Kansas cases have consistently held that these provisions of the Motor Vehicle Registration Act "mean exactly what they say; that they are to be literally interpreted and strictly enforced; and that failure to comply therewith renders the sale of a vehicle required to be registered under the Act fraudulent and void." *Green v. Devoe Sales, Inc.,* 206 Kan. 238, 243, 477 P.2d 944 (1970); see *Melton v. Prickett,* 203 Kan. 501, 508, 456 P.2d 34 (1969); *Wilcox Trailer Sales, Inc. v. Miller,* 200 Kan. 315, 321, 436 P.2d 860 (1968), and cases cited therein. As is customarily the case with statutes involving public policy, the courts have literally interpreted and strictly enforced these statutory provisions to promote the purposes of the Act, which are:

"to provide a ready means for ascertaining the owner of a motor vehicle, compel payment of sales tax by the purchaser of an automobile, prevent fraud and theft of automobiles, prevent trafficking in stolen automobiles, and to lend stability to the business climate surrounding the sale of automobiles." *In re Littlejohn,* 519 F.2d 356, 358 (10th Cir. 1975) (applying Kansas law).

We pause to note that the above quote from *Littlejohn* makes it apparent that the statute, in fact, has broad public policy ramifications.

The simple issue raised by this appeal is whether K.S.A. 1986 Supp. 8-135(c)(7) requires the seller of an automobile to deliver, in fact, the certificate of title to the purchaser within thirty days after the sale, or whether a mere agreement to do so satisfies the statute. We hold that the seller of an automobile must deliver the certificate of title to the purchaser either at the time of the sale, or, if the parties so agree, at a time within thirty days after the sale. If the seller fails to so deliver the title, the sale is fraudulent and void.

In *Heshion Motors, Inc. v. Trinity Universal Ins. Co.,* 229 Kan. 412, 625 P.2d 437 (1981), the court interpreted a prior version of

K.S.A. 1986 Supp. 8-135(c)(7) which allotted only a fifteen-day as opposed to a thirty-day period within which time the parties could agree to transfer the certificate of title. The case involved a declaratory judgment action to determine whether the plaintiff car dealership had insurance coverage for a loss it suffered when one of its cars was stolen from its lot and stripped. The specific issue was whether the plaintiff had "full and valid title" at the time the car was stolen. Under the facts of the case, the plaintiff had possession of the automobile, but had not yet received its certificate of title. The supreme court, in part, held that "[i]n the cases where the parties agree to a later date for delivery of the certificate of title, not later than fifteen (15) days, *and delivery is made pursuant to the agreement,* a full and valid title relates back to the date of delivery of the vehicle." *Heshion Motors, Inc.,* 229 Kan. at 415. (Emphasis added.) Thus, the *Heshion Motors* case is authority for our conclusion that K.S.A. 1986 Supp. 8-135(c)(7) requires not only an agreement to deliver the title within the thirty-day period, but also requires that delivery of the certificate of title *in fact* occur within the agreed-upon time. See also *Ellsworth v. Worthey,* 612 S.W.2d 396, 400 (Mo. App. 1981) (applying Kansas law).

Further, if the statutory fraud could be avoided by a mere agreement to deliver the certificate of title within 30 days after the delivery of the vehicle, such a rule would not promote the various purposes of the statute. For example, the existence of a mere agreement to deliver title within 30 days would not provide a ready means for ascertaining the owner of a motor vehicle, nor would it prevent fraud. However, our holding herein, which requires actual delivery of the title within the time agreed to by the parties, promotes the purposes of K.S.A. 1986 Supp. 8-135(c)(7).

While Goff Motors may have made an ostensibly good faith attempt to deliver the title to the plaintiffs after the agreed-upon time had expired, the fact is that a title did not pass between the parties within those fifteen days. Again, the provisions of K.S.A. 1986 Supp. 8-135(c)(7) have been strictly enforced to promote the purposes of the Motor Vehicle Registration Act; there is no provision in the statute or in the case law interpreting it for "substantial compliance." Goff Motors is a car dealership and

should be well aware of the Kansas laws concerning the transfer of certificates of title. Consequently, despite the efforts of Goff Motors to deliver the certificate of title to the plaintiffs after the fifteen days had elapsed, we conclude that these efforts did not validate the already "void" sale.

Because the sale of the Pontiac was "fraudulent and void," the next issue is whether the Perrys should be able to rescind the sale. As analyzed below, we conclude that they should.

In passing, we note that the sale of the Pontiac constituted a "transaction in goods," thus activating the provisions of the Uniform Commercial Code. K.S.A. 84-2-102. "Rescission" is a common-law equitable remedy, and the UCC substitutes the concept of "revocation of acceptance" for the remedy of rescission. Cases are divided on the issue of whether the UCC's remedy of revocation of acceptance affects a party's right to pursue the "non-code" remedy of rescission. See *Calloway v. Manion,* 572 F.2d 1033, 1039 (5th Cir. 1978); *Palmer v. Idaho Peterbilt, Inc.,* 102 Idaho 800, 802, 641 P.2d 346 (1982); *Sudol v. Rudy Papa Motors,* 175 N.J. Super. 238, 241-42, 417 A.2d 1133 (1980); *Russo v. Guardsman Lease Plan, Inc.,* 82 App. Div. 2d 801, 439 N.Y.S.2d 214 (1981); *DeCoria v. Red's Trailer Mart,* 5 Wash. App. 892, 894, 491 P.2d 241 (1971). We hold that, although the UCC substitutes the common-law remedy of rescission with the concepts of rejection and revocation of acceptance, the existence of the statutory remedies does not affect a party's right to pursue an action for rescission.

We reach this conclusion through two provisions of the UCC. Under K.S.A. 84-1-103, the "principles of law and equity, including the law . . . relative to . . . fraud . . . or other validating or invalidating cause shall supplement its provisions." K.S.A. 84-1-103 recognizes that the UCC does not cover everything, and that other non-code provisions must supplement the code in the appropriate case. The sale of the Pontiac was "invalidated" by operation of K.S.A. 1986 Supp. 8-135(c)(7) and the equitable remedy of rescission should be available to set aside the sale. In addition, K.S.A. 84-2-721 provides that "[n]either rescission or a claim for rescission of the contract for sale nor rejection or return of the goods shall bar or be deemed inconsistent with a claim for damages or other remedy." This provision of

the UCC specifically contemplates an action for rescission. We conclude that a party's right to seek the equitable remedy of rescission has not been affected by any provision of the UCC.

Goff Motors' failure to comply with the provisions of K.S.A. 1986 Supp. 8-135(c)(7) rendered the sale of the Pontiac fraudulent and void. Because the sale was void, title to the Pontiac remained in Goff Motors. *Heshion Motors, Inc. v. Trinity Universal Ins. Co.,* 5 Kan. App. 2d 432, 434, 618 P.2d 327 (1980), *modified* 229 Kan. 412, 625 P.2d 437 (1981); *Gicinto v. Credithrift of America,* 219 Kan. 766, 549 P.2d 870 (1976); *Melton v. Prickett,* 203 Kan. 501; *Maryland Cas. Co. v. American Family Insurance Group,* 199 Kan. 373, 429 P.2d 931 (1967). Because title to the Pontiac remained in Goff Motors, the Perrys in effect received nothing as a result of the sale.

" 'Rescission is an equitable remedy designed to afford relief from a contract entered into through mistake, fraud or duress.' " *Nordstrom v. Miller,* 227 Kan. 59, 68, 605 P.2d 545 (1980) (quoting *Cleaves v. Thompson,* 122 Kan. 43, 46, 251 Pac. 429 [1926]). The sale of an automobile in violation of K.S.A. 1986 Supp. 8-135(c)(7) gives rise to an action to set aside, or rescind, the sale. *Tilson v. Newell,* 179 Kan. 73, 77-78, 293 P.2d 227 (1956).

The sale of the automobile violated K.S.A. 1986 Supp. 8-135(c)(7) and was fraudulent and void. Because the sale was void by operation of law, the trial court should have rescinded the contract.

Are the Perrys estopped from asserting the invalidity of the sale? The magistrate judge apparently believed as much, and references were made to the doctrine at trial and on appeal. It is notable, however, that neither the magistrate judge nor the district judge used the term "estoppel" in their memorandum opinions; neither judge made specific conclusions that he was holding that estoppel applied. Among other things, the district judge failed to make specific findings relative to the ingredients necessary to establish estoppel. For example, no finding is made relative to any detrimental reliance. Further, only defendant G.M.A.C. pleaded this affirmative defense. Because Goff Motors failed to affirmatively plead estoppel as a defense, it has waived its right to assert it. *Oehme v. Oehme,* 10 Kan. App. 2d 73, 77, 691 P.2d 1325 (1984), *rev. denied* 236 Kan. 876 (1985).

However, had Goff Motors properly pleaded the defense of estoppel, we conclude that neither it, nor G.M.A.C., may use that defense in this context. It is the general rule that validity cannot be given to a void contract through any principle of estoppel. *Moving Picture Machine Op. Local No. 236 v. Cayson,* 281 Ala. 468, 480, 205 So. 2d 222 (1967); *Sumner Development Corporation v. Shivers,* 517 P.2d 757, 762 (Alaska 1974); *Corti v. Fleisher,* 93 Ill. App. 3d 517, 532, 417 N.E.2d 764 (1981); *Vedder v. Spellman,* 78 Wash. 2d 834, Syl. ¶ 3, 480 P.2d 207 (1971). To do so in the present case would run afoul of the express language of K.S.A. 1986 Supp. 8-135(c)(7) rendering a sale in violation of the statute "void." If we were to estop the Perrys from asserting the illegality of the sale, we would in effect validate a sale that the legislature has not only deemed void, but has declared to be illegal as well. K.S.A. 1986 Supp. 8-135(c)(7); K.S.A. 8-149. Estoppel should never be used to defeat public policy.

Assuming, for the sake of argument, that estoppel would be available to prevent the Perrys from rescinding the sale, we believe that it would be inappropriate to apply it to the facts of this case. The defendants contend the Perrys should be estopped from setting aside the sale because the Perrys put over 3,500 miles on the car in the eight weeks they had it and also that they made one payment to G.M.A.C. on their loan.

The facts of the case indicate that Mr. Perry used the automobile to commute to and from work and that this mileage totalled 57 miles a day. In *Johnson v. General Motors Corp.,* 233 Kan. 1044, 1048-1049, 668 P.2d 139 (1983), the court stated:

"A buyer's continued use of the goods after revocation of acceptance can constitute an acceptance of ownership and invalidate a cancellation of sale. Here buyers were placed in a position where if they stored the truck or properly sold the truck, they would not have a vehicle for transportation until the trial of the issues or would be required to lease or purchase an additional vehicle. The buyers' continued use of the vehicle under these circumstances was not an act of continued use which constituted an acceptance of ownership after revocation. With little or no low-cost public transportation available to the public, private transportation has changed from a luxury to a necessity."

We do not believe that Mr. Perry's continued use of the Pontiac in this case estops him from asserting the invalidity of the sale. The necessity of such use was not of his own making. Goff

Motors had the van that he traded in, and it is obvious that he needed a car to get to work. Thus, while Perry's use of the car was justified, the reasonable value of such use may be considered in restoring the status quo.

Similarly, we do not believe the fact that the Perrys made one payment to G.M.A.C. justifies an estoppel herein, especially in light of the fact that Mr. Perry testified he made the payment to "get them off our backs." Thus, even if estoppel was available as a defense herein, we conclude that the facts are insufficient to estop the plaintiffs from enforcing their statutory rights.

Lastly, the plaintiffs contend the district court erred in granting judgment for G.M.A.C. on its counterclaim for foreclosure of its security interest in the Pontiac. We agree. G.M.A.C. is an assignee of the contract and as such is subject to all claims and defenses of the plaintiffs against Goff Motors arising out of the sale of the Pontiac. K.S.A. 16a-3-404. Thus, G.M.A.C. took the contract subject to plaintiffs' claim that the sale was fraudulent and void, and the district court erred in granting judgment in favor of G.M.A.C. on its foreclosure action.

Reversed and remanded with instructions to grant judgment in plaintiffs' favor on their rescission action, and to determine the amount of damages necessary to restore each party to the status quo.

ABBOTT, C.J., dissenting: I express no comments as to syllabus ¶ 2 and the corresponding portion of the opinion. I deem that issue inapplicable because it was neither raised by the parties nor considered by the trial court.

I dissent from that part of the opinion holding that estoppel cannot be used as a defense to a void contract. No useful purpose would be served by listing examples where estoppel could be applied. It is my opinion that estoppel could possibly be applied in this case, depending on how the trial court determined disputed facts, the inferences it drew from the record, and its right to reject certain testimony.

The findings of fact and conclusions of law are inadequate to permit meaningful review as to what theory of law and facts the trial court relied on. I would simply remand the case for the trial judge to make findings of fact and conclusions of law sufficient to permit meaningful review.