984 P.2d 697

Lonnie **LICKLEY**, Plaintiff–Respondent–
Cross Appellant,

v.

**MAX HERBOLD, INC.**, an Idaho cor-
poration, Defendant–Appellant–
Cross Respondent.

No. 24615.

Supreme Court of Idaho,
Boise, March 1999 Term.

July 21, 1999.

Rehearing Denied Sept. 16, 1999.

Chisholm Law Office, Burley, for appellant. Donald J. Chisholm argued.

Parsons, Smith & Stone, Burley, for respondent. Richard K. Smith argued.

TROUT, Chief Justice.

This appeal involves a contract dispute. Lonnie Lickley (Lickley), a potato grower, entered a preseason potato growing contract with Max Herbold, Inc. (Herbold). After harvest, a dispute arose as to the price to be paid. Following a bench trial, the court awarded Lickley $33,000 in damages. The trial court found that because a substantial portion of the potatoes delivered failed to meet agreed upon standards, the contract required the parties to renegotiate a price. However, the parties could not agree, so the trial court set the price for the substandard potatoes at $7.55 per cwt., the market price at the time of delivery. Herbold appeals and Lickley cross-appeals.

## I.

### FACTUAL AND PROCEDURAL HISTORY

In 1995, Lickley entered a "One Year Potato Growing and Sales Contract" with Herbold. Lickley agreed to plant, cultivate, harvest, and deliver 12,000 cwt. of Russet Burbank potatoes. The contract set a base price of $6.15 per cwt. Then, depending on the quality of the potatoes delivered, the contract provided for price adjustments.

To determine the quality of each load and establish a purchase price, the contract provided for inspection by the "Federal–State Inspection Service." Paragraph (C)(4)(b) of the contract set minimum quality standards providing:

> Any load or combination of loads inspecting below fifty percent (50%) well shaped U.S. NO. 1, two inch or 4 ounce minimum will be rejected under the contract.

The contract also contemplated that an inspection might not be completed until after a load had been delivered and the potatoes commingled. In such instances, paragraph (C)(4)(e) provides:

> The price for any load or combination of loads already delivered and placed in Company storage subsequently determined by inspection to be rejectable under this contract will have to be renegotiated between Grower and Company.

Over six days, Lickley delivered twenty-three truckloads totaling just over 12,000 cwt. of potatoes. Herbold accepted the shipments and commingled the potatoes with deliveries from other growers. Results from the inspections showed that the combination of loads delivered on each of the first four days failed to meet the minimum standards. Viewing all six days deliveries as a whole, eighty-five percent of the potatoes graded below the "U.S. No 1 two inch or 4 ounce minimum" standard.

Herbold notified Lickley that the potatoes were substandard and calculated a net price of $3.22 per cwt. using the pricing formula set out in the contract. Because a number of the accepted potatoes were "rejectable," Lickley sought to renegotiate the price under the contract insisting upon $8.00 per cwt. Herbold rejected the offer. At a second meeting, Lickley requested $5.00 per cwt. and Herbold countered offering to waive the freight charges of $4,096 or to increase the initial $3.22 per cwt. offer to reflect that amount. Lickley refused, and this litigation ensued.

In January 1996, Lickley filed a complaint alleging that Herbold breached the contract by failing to renegotiate a price for the "rejectable" potatoes. Lickley asserted that he suffered more than $80,000 in damages, the market value of the potatoes at the time of delivery. Herbold answered claiming that Lickley failed to deliver conforming potatoes. While it accepted the goods, Herbold argues that Idaho law only requires that it pay the contract price.

Following a bench trial, the late Judge Granata found that the contract only required Lickley to deliver 12,000 cwt. of "field run potatoes" and that Lickley fully performed his obligations under the agreement. Herbold accepted all shipments. Because Herbold accepted "rejectable" potatoes, the contract required the parties to renegotiate a price for those potatoes. Judge Granata ultimately concluded that Herbold failed to negotiate in good faith and, as a result, determined that a reasonable price would be $7.55 per cwt., the market price at the time.[1] The lower court awarded Lickley damages based on the market price for the rejectable potatoes and $4.11 per cwt. for the conforming potatoes—less costs, freight, and an amount previously tendered. The lower court also awarded costs and attorney fees to Lickley but denied Lickley's request for prejudgment interest.

Both parties appeal.

## II.

### STANDARD OF REVIEW

Herbold brings this appeal asking this Court to review the district judge's interpretation of the potato growing contract. Where the language of the contract makes clear the intentions of the parties, the interpretation and legal effect of the contract are questions of law over which we exercise free review. *First Security Bank of Idaho v. Murphy*, 131 Idaho 787, 791, 964 P.2d 654, 658 (1998). When interpreting any one contract provision, we must view the entire agreement as a whole to discern the parties' intentions. *Id.* However, this Court will not set aside findings of fact unless they are clearly erroneous. *Hunter v. Shields*, 131 Idaho 148, 151, 953 P.2d 588, 591 (1998). If the district court's factual determinations are supported by substantial and competent, albeit conflicting, evidence, we will not disturb

1. The district judge initially found the reasonable price to be $5.05 per cwt. noting that setting the price for rejectable potatoes higher than the maximum allowed for conforming potatoes would be commercially unreasonable. For reasons not apparent in the record, Judge Granata amended his findings of fact and conclusions of law and awarded damages based upon the fair market value of the rejectable potatoes.

those findings. *Marshall v. Blair*, 130 Idaho 675, 679, 946 P.2d 975, 979 (1997).

## III.

## DISCUSSION

◼ *The Contract.* This dispute involves a contract for sale of goods governed by the Uniform Commercial Code. *See* I.C. §§ 28–2–102, 105(1). There is no dispute as to the existence or validity of the contract, only the purchase price. Lickley agreed to plant, cultivate, harvest, and deliver 12,000 cwt. of Russet Burbank potatoes. Lickley delivered twenty-three loads over six days totaling just over 12,000 cwt. The purchase price depended upon the quality of the potatoes delivered. Under the contract's terms, Herbold could reject any load or combination of loads that failed to meet specific minimum requirements, that is, "fifty percent (50%) well shaped U.S. NO. 1, two inch 4 ounce minimum." The Federal–State Inspection Service examined the combined loads from each day, but did not return the results until Herbold had accepted each delivery by commingling the potatoes in its storage facilities. *See* I.C. § 28–2–606. Only the deliveries over the last two days met the contract requirements. In fact, viewing all shipments as a whole, eighty-five percent fell below the contract standard. Neither party challenges the inspection results.

The contract contemplated just this event, providing the following:

> The price for any load or combination of loads already delivered and placed into Company storage subsequently determined by inspection to be rejectable under this contract will have to be renegotiated between Grower and Company.

Using the contract's pricing formula for conforming potatoes, Herbold calculated the purchase price for each day's deliveries. The net result was $3.22 per cwt. for all the potatoes delivered. Lickley rejected Herbold's initial offer for this amount. The parties met twice and failed to agree upon a price.

The district judge found that Herbold breached the contract by failing to renegotiate in good faith. Herbold challenges this conclusion on appeal. However, whether or not Herbold negotiated in good faith is ultimately of no consequence in this case. The fact remains that Herbold accepted the goods and that Lickley is merely attempting to recover what he believes to be the contract price. The only issue, then, is whether the district judge properly concluded $7.55 per cwt. to be the contract price for the rejectable potatoes.

◼ *Open Price Term.* By commingling and failing to reject any deliveries, Herbold accepted all twenty-three loads. *See* I.C. § 28–2–606. Consequently, it is obligated to pay the contract price. *See* I.C. § 28–2–607. Paragraph C of the contract provided a specific formula to calculate the purchase price. However, under paragraph C(4)(e), if Herbold accepted "rejectable" potatoes, the contract required the parties to renegotiate the price. The parties do not dispute that at least Lickley's first four days, deliveries were rejectable, but Lickley contends that all the potatoes were rejectable. Consequently, the parties left the contract price open as to the rejectable potatoes.

◼ So long as the parties intend to enter a contract, their agreement will not fail for indefiniteness where they do not settle the price. I.C. § 28–2–305. It is clear from the record that Herbold and Lickley intended to enter an enforceable agreement. Where the contract leaves the price open for negotiation and the parties fail to agree, § 28–2–305(1) provides: "In such a case the price is a reasonable price at the time for delivery. . . ." Lickley and Herbold failed to agree upon a price. Lickley argued below that the market price, approximately $7.50 per cwt. at the time for delivery, was the reasonable price. Herbold argued that the market price is not a reasonable price. Instead, a reasonable price could not exceed the price as calculated under paragraph C of the contract.

◼ The district judge determined the market price of $7.55 per cwt. to be a reasonable price at the time for delivery. So long as this factual determination is supported by substantial and competent evidence, we will not disturb this finding on appeal. Without

providing an express distinction between the two, the Uniform Commercial Code uses the terms "reasonable price" and "market price" in a number of contexts. As is evident from their use, their meanings are not necessarily interchangeable.[2] The question facing us, however, is whether substantial and competent evidence in the record supports the trial court's finding. Under the limited circumstances presented in this case, we conclude that there is. At the time Lickley delivered potatoes to Herbold, he also sold potatoes from the same field on the open market and received between $7.50 and $8.00 per cwt. Although, as Herbold contends, the intent of the parties as reflected in the contract's pricing structure might lead to a lower price, we cannot, as a matter of law, hold that the trial court erred.

■ *Quantity of Rejectable Potatoes.* The district judge found that 7,532.30 cwt. or the first four days' loads of the potatoes were rejectable. Lickley cross-appeals arguing that the district judge erred by not finding all twenty-three loads rejectable. The contract provides that "Any load *or combination of loads*" failing to meet grade will be rejected. Lickley contends that viewing all six days' deliveries in combination, the potatoes inspected well below "fifty percent (50%) well shaped U.S. NO. 1, two inch or 4 ounce minimum." In fact, eighty-five percent of all potatoes failed to meet the standard. Consequently, Lickley argues all six days' shipments were rejectable.

However, a more reasonable interpretation of this provision leads to the ultimate conclusion reached by the trial court. The "combination of loads" language reflects the fact that multiple loads could be and were delivered on a given day. However, the inspection service, as is reflected in the record, sampled each day's deliveries as a whole. The "combination of loads" received on each of the first four days did not conform while the "combination of loads" delivered on the last two did. Therefore, the trial court properly concluded that only the loads delivered on the first four days were rejectable.

■ *Prejudgment Interest.* Lickley also cross-appeals arguing that the trial court erred in failing to award prejudgment interest on the award. Idaho Code § 28–22–104(1) entitles a party to interest for money due under an express contract. However, prejudgment interest may only be awarded when the "principal amount of liability under the contract is liquidated or ascertainable by a mere mathematical calculation." *Bott v. Idaho State Bldg. Auth.,* 128 Idaho 580, 592, 917 P.2d 737, 749 (1996). In the present case, the amount due under the contract was a reasonable price at the time for delivery. While we agree with the district court that the market price at the time of delivery was a reasonable price, that figure was not readily known or calculated until after the court rendered its decision. Consequently the trial court properly denied Lickley's claim for prejudgment interest.

■ *Attorney Fees Below and on Appeal.* This case involves a dispute over an amount due under a commercial transaction. Consequently, an award of reasonable attorney fees to the prevailing party, both below and on appeal, is mandatory under both I.C. § 12–120(3) and the express provisions of paragraph O in the contract. Herbold argues that because Lickley originally requested $81,000 in damages and was ultimately

---

2. Idaho Code § 28–2–305(2) will recognize a contract as valid where the price is to be fixed at a later date by either the buyer or the seller. That subsection also requires the party fixing the price to do so in good faith. I.C. § 28–2–305(2). Comment three to § 28–2–305 provides that "in the *normal* case a ... 'market price,' or the like satisfies the good faith requirement." I.C. § 28–2–305 cmt. 3 (emphasis added). However, this Court is presented with a case where the buyer and seller were to agree on a price but failed to do so.

Moreover, if a buyer wrongfully rejects goods, the seller's damages generally include the differ-

ence between the *market price* and the unpaid contract price. I.C. § 28–2–708. However, under § 28–2–709 the seller may recover the contract price if the seller is unable to resell the goods at a *reasonable price.* I.C. § 28–2–709(1)(b). If the seller successfully finds another buyer, its damages include the difference between the contract price and the resale price— but only if the goods were resold in a commercially *reasonable* manner. I.C. § 28–2–706(1). Where the seller fails to deliver the goods under the contract, the buyer's damages include the difference between the *market price* and the contract price. I.C. § 28–2–713.

only awarded \$33,000, the trial court abused its discretion under I.R.C.P. 54(d)(1)(B) by concluding that Lickley prevailed. A review of the record reveals no error in the trial court's conclusion. By far the greatest issue in the case below entailed whether Lickley was entitled to the market price for the rejectable potatoes-an issue on which Lickley prevailed both below and on appeal. Therefore, we uphold the decision awarding fees below and award attorney fees as well as costs to Lickley on appeal.

## IV.

### CONCLUSION

For the reasons stated above, we affirm the decision of the trial court. Pursuant to Appellate Rules 40 and 41, we award costs and reasonable attorney fees to Lickley on appeal.

Justices SILAK, WALTERS and KIDWELL, concur.

Justice SCHROEDER, dissenting.

I respectfully dissent from the opinion of the Court affirming the district court's determination that the market price was the reasonable price for the rejectable potatoes. It is contrary to the purpose of the contract and commercially unreasonable to award Lickley more for rejectable potatoes than he would have received had he delivered conforming potatoes. The district court recognized this in its initial decision which was amended without explanation. Finding of Fact No. 32 in the first decision stated the following: "The 'open price term' is found by the court to be \$5.05 per cwt., as reflected in Defendant's Exhibit F; the court rejects the use of the \$7.50 per cwt." The district court explained its rationale in Conclusion of Law No. 17:

17. The reasonable price for the "rejectable" potatoes delivered by the plaintiff to the defendant in October, 1995, is \$5.05 per cwt., based upon this court's determination in Finding of Fact No. 32. An award greater than \$5.05 per cwt. would be unreasonable under all of the facts and circumstances of this case, as well as in consideration of the purpose of the parties'

entering into this contract. Additionally, any award of a higher price for the plaintiff's "rejectable" potatoes than the contract price for conforming potatoes would not fall within reasonable commercial standards of fair dealing in the trade. *Idaho Code*, Section 28-2-103(b). This conclusion of law also hereby incorporates Findings of Fact Nos. 32 and 33. *Palmer v. Idaho Peterbilt, Inc.*, 102 Idaho 800, 802-03, 641 P.2d 346, 348-49 (Ct.App.1982).

The reason buyers and sellers enter contracts such as this is to lock into a predictable price. The potato grower wants to ensure his costs are covered in case of a poor market, and the buyer wants to ensure a supply at a predictable and affordable cost in case of high demand. By entering pre-season contracts the grower takes the risk that the market price will exceed the contract price. Similarly, the buyer takes the risk that the contract price will exceed the crop's value at the time for delivery. In this case the contract provides a formula to calculate the price for non-rejectable potatoes. Lickley could not reasonably have expected to be paid more for rejectable potatoes than he was for the potatoes meeting the contract's minimum standards, and Herbold could not have expected to pay more for rejectable potatoes than for conforming potatoes. As an illustration, Herbold could have rightfully rejected the potatoes, and if Lickley could not fulfill his obligations, Herbold would have been able to recover the difference between the market price and the contract price for conforming potatoes. *See* I.C. § 28-2-713. The reasonable price of rejectable potatoes at the time for delivery must be determined with regard to the contract price for acceptable potatoes. If a third person reading this contract had asked, "Does this mean Lickley can make more money by delivering rejectable potatoes than by delivering conforming potatoes?," the answer surely would have been "no" from both parties. The purpose of the contract is defeated by such an interpretation. In the amended decision the district judge found that \$7.55 cwt. was a reasonable price at the time for delivery, an amount higher than the contract price for conforming potatoes. In

light of the parties' intentions as reflected in the contract, this Court should conclude that the district court erred in finding the market price to be a reasonable price under the contract. The parties' agreed to a specific pricing structure for conforming potatoes. Their intention as to what constitutes a reasonable price for rejectable potatoes can be inferred from that pricing structure. As the quality of the potatoes decreased, so did Lickley's expected return.

This Court should vacate the decision of the district court and remand the case for a determination that reflects the purpose of the contract and the clear intent of the parties. Affirming the district court gives Lickley a benefit he could not have contemplated under the contract.